## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| In re: | ) )  Chapter 11 |
| NIELSEN & BAINBRIDGE, LLC, *et al.*,[1] | )  Case No. 23-90071 (DRJ) |
| Debtors. | ) )  (Joint Administration Requested) )  (Emergency Hearing Requested) |

### DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY OF AN
### ORDER (I) ESTABLISHING BIDDING PROCEDURES, (II) SCHEDULING
### CERTAIN DATES WITH RESPECT THERETO, (III) APPROVING THE FORM
### AND MANNER OF NOTICE THEREOF, AND (IV) GRANTING RELATED RELIEF

> **Emergency relief has been requested. Relief is requested not later than February 22, 2023.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") state as follows in support of this motion (the "<u>Motion</u>"):[2]

### Preliminary Statement

1.    The Debtors commenced these chapter 11 cases (the "<u>Chapter 11 Cases</u>") with a single objective:  reorganizing the Debtors' business as quickly as possible in a manner that maximizes value for all of the Debtors' stakeholders.  To that end, as described more fully in the

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/NBGHome.  The Debtors' service address in these chapter 11 cases is:  12303 Technology Boulevard, Suite 950, Austin, TX 78727.

[2]    The facts and circumstances supporting this Motion are set forth in the *Declaration of Amy Lee, Chief Transformation Officer of Nielsen & Bainbridge, LLC, in Support of Chapter 11 Petitions and First Day Pleadings* (the "<u>First Day Declaration</u>"), filed contemporaneously with this Motion and incorporated by reference herein.  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the First Day Declaration or the Bidding Procedures (defined herein), as applicable.

First Day Declaration, the Debtors entered into the Restructuring Support Agreement and negotiated the Plan, contemplating that the Initial Plan Sponsors—affiliates of Silver Point Capital, L.P. ("Silver Point") and KKR Credit Advisors (US) LLC ("KKR")—would serve as a stalking horse bidder to purchase 100% of the equity of the reorganized Debtors (the "New Common Stock") through the Plan.  To establish a minimum purchase price and facilitate the Marketing Process on a postpetition basis, the Initial Plan Sponsors have committed to purchase 100% of the New Common Stock issued as of the Effective Date for an amount of cash at least equal to the total amount of Allowed DIP Roll-Up Claims attributable to the initial principal amount of DIP Roll-Up Loans, *plus* any Additional Cash Amount (the "Stalking Horse Bid"). Consideration for the Stalking Horse Bid shall equal the total amount of Allowed DIP Claims as of the Effective Date, *plus* the total amount outstanding under the ABL Facility as of the Effective Date (collectively, the "Stalking Horse Bid Consideration").

2.      The Debtors have already started marketing the sale of the New Common Stock in order to create as competitive an auction as possible.  Specifically, on January 18, 2023, the Debtors' investment banker, Guggenheim Securities, LLC ("Guggenheim Securities"), initiated a marketing process (the "Marketing Process") to find potential strategic or financial purchasers of the Debtors' businesses as a going concern.  The Debtors, with the assistance of Guggenheim Securities, have invested substantial time and effort in the Marketing Process: as of the date hereof, the Debtors have approached 91 prospective purchasers ranging from sponsors with a related portfolio company and/or sponsors that specialize in complex situations.  Twenty-one such prospective purchasers executed confidentiality agreements and were provided with access to a virtual dataroom that contained confidential evaluation materials and 39 others continue to discuss potential purchases of the New Common Stock.  Guggenheim Securities and the Debtors remain

engaged in active discussions with these parties with respect to potential value-maximizing transactions.

3.     The Debtors intend to continue market testing the Stalking Horse Bid against other potential offers in order to maximize value for all stakeholders.  To the extent that the Marketing Process results in viable competing bids, the Debtors will hold an auction (the "Auction") pursuant to the bidding procedures attached as **Exhibit 1** hereto (the "Bidding Procedures") to obtain the maximum available market value for the New Common Stock.  Should the Debtors ultimately determine that a bid other than the Stalking Horse Bid is the winning bid (any such bid, the "Winning Bid, and any such bidder, the "Winning Bidder"), the Winning Bidder will become the Plan Sponsor.  Any value in the Winning Bid above the Stalking Horse Bid Consideration (the "Additional Value") will be distributed as set forth in the Plan.  In the event that such a bid does not materialize, the Debtors will consummate the sale with the Initial Plan Sponsors (the "Plan Sale").  In either case, the bid that represents the highest or otherwise best offer in the Debtors' business judgment shall be the Winning Bid.  Completing the Marketing Process on a postpetition basis will ensure the Debtors' ability to fulfill their fiduciary duties, insofar as it will serve as a market check on the value of the proposed recoveries to holders of Claims and Interests under the Plan Sale.

4.     The proposed postpetition timeline for the Marketing Process, though expedient, implements a reasonable schedule that provides sufficient time to continue canvassing the market for potential bidders or plan sponsors, especially in light of the Debtors' prepetition and ongoing Marketing Process, and is appropriate under the circumstances.  The Debtors believe that approval of the Bidding Procedures on an expedited basis, moreover, will maximize the time available to potential purchasers to review diligence and develop and submit bids within the proposed timeline

for the postpetition Marketing Process.  Given that the timeline and procedures contemplated herein were heavily negotiated with the Initial Plan Sponsors as part of the Plan Sale, and that the Debtors will incur considerable expenses the longer the Chapter 11 Cases remain ongoing, it is essential that the Debtors consummate the Plan and emerge from chapter 11 as expeditiously as possible.

5.      By this Motion, the Debtors seek approval of the Bidding Procedures to govern the completion of the Marketing Process and ensure that the Debtors obtain the highest or otherwise best offer for the New Common Stock, have sufficient time to receive and evaluate bids, hold the Auction, if necessary, and confirm the Plan while remaining in compliance with the DIP milestones.

6.      As set forth in further detail below, the Bidding Procedures and relief requested in this Motion are in the best interests of the Debtors' estates and their stakeholders.  Accordingly, the Debtors request that the Court grant the relief requested herein.

## Relief Requested

7.      The Debtors seek entry of an order (the "Order"), substantially in the form attached hereto (the "Bidding Procedures Order"), (a) authorizing and approving the Bidding Procedures, attached to the Bidding Procedures Order as Exhibit 1, by which the Debtors will solicit and select the highest or otherwise best offer(s) for the New Common Stock, potentially at the Auction, if needed, (b) scheduling certain dates with respect thereto, (c) approving the form and manner of notice thereof, and (d) granting related relief.

## Jurisdiction and Venue

8.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This matter is a core

proceeding within the meaning of 28 U.S.C. § 157(b).  The Debtors confirm their consent to the entry of a final order.

9.       Venue is permissible pursuant to 28 U.S.C. §§ 1408 and 1409.

10.      The bases for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 6003, and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 1075-1 and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

**Background**

11.      Nielsen & Bainbridge, LLC, together with its Debtor and non-Debtor affiliates, is a key end-to-end supplier of affordable home décor and hardwire lighting in the United States operating under the trade name NBG Home.  NBG Home serves a portfolio of prominent retail partners in the design, development, and fulfillment of products such as lighting, accents, furniture, soft home goods, wall décor, and frames sold under various brand names.  NBG Home operates eight business units touching the brick-and-mortar and eCommerce spaces and employs approximately 730 individuals across the United States.

12.      On February 8, 2023, (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  A detailed description of the Debtors, their businesses, and the facts and circumstances supporting the Debtors' chapter 11 cases are set forth in greater detail in the First Day Declaration, filed substantially contemporaneously herewith and incorporated by reference herein.

13.     The Debtors have concurrently filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).   The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.   No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

## The Proposed Marketing Process and Bidding Procedures

**I.      The Proposed Schedule.**

14.     The Debtors believe the proposed schedule is in the best interests of all stakeholders in these Chapter 11 Cases.   Among other reasons, it is critical for the Debtors to execute on any proposed transaction within the timeframe contemplated by the milestones in the DIP Credit Agreement Documents.   Accordingly, the Debtors propose the following timeline for the Marketing Process, as provided for in the Bidding Procedures:

| Date and Time (all times in Central Time) | Event or Deadline |
|---|---|
| March 19, 2023, at 5:00 p.m. | Bid Deadline |
| March 20, 2023, at 5:00 p.m. | Deadline to notify all Qualified Bidders of the highest or otherwise best Qualified Bid and provide copies of the documents supporting such Bid to all Qualified Bidders. |
| March 21, 2023, at 9:00 a.m. | Auction (if required) |
| March 22, 2023, at 10:00 a.m. | Deadline for objections to approval of any Bid, including objections based on the manner in which the Auction was conducted and the identity of the Winning Bidder, whether submitted prior to, on, or after the Bid Deadline. |
| March 24, 2023 | Combined Hearing |

15.     The Debtors believe that this timeline provides them with an opportunity to conduct a fulsome Marketing Process while still proceeding expeditiously toward confirmation of the Plan. Including the prepetition marketing efforts, by the Bid Deadline, the Debtors will have been

actively marketing the New Common Stock for over seven weeks and anticipate having reached

out to over 100 potential financial and strategic purchasers.  The Debtors believe that timeframe

will allow prospective purchasers to conduct the necessary diligence and submit a competitive bid,

if desired.  Accordingly, the proposed schedule is in the best interests of their creditors, other

stakeholders, and all other parties-in-interest, and should be approved.

## II.     The Bidding Procedures.

16.     To optimally and expeditiously solicit, receive, and evaluate bids in a fair and

accessible manner, the Debtors have developed the Bidding Procedures, attached as **Exhibit 1** to

the Bidding Procedures Order.   The following describes certain material points of the

Bidding Procedures:[3]

| Requirement | Description |
|---|---|
| **Participation Requirements** | To receive due diligence information, including full access to the Debtors' electronic data room and additional non-public information regarding the Debtors, a party interested in consummating a transaction (a "Potential Bidder") should deliver (or have delivered) an executed confidentiality agreement (a "Confidentiality Agreement") in form and substance acceptable to the Debtors, to the extent not already executed, to the Debtors' Advisors. |
|  | Promptly after a Potential Bidder delivers an executed Confidentiality Agreement to the Debtors' Advisors, such Potential Bidder may submit a Bid. Except as otherwise determined in the Debtors' business judgment, only those Potential Bidders that have delivered executed Confidentiality Agreements (each, an "Acceptable Bidder")[4] may submit Bids. |
| **Bid Deadline** | An Acceptable Bidder that desires to make a proposal, solicitation, or offer (each, a "Bid") shall transmit such proposal, solicitation, or offer via email (in .pdf or similar format) so as to be **actually received** on or before |

---

[3]   This summary is qualified in its entirety by the Bidding Procedures attached as **Exhibit 1** to the Bidding Procedures Order.  All capitalized terms that are used in this summary but not otherwise defined herein shall have the meanings given to such terms in the Bidding Procedures.  To the extent there are any conflicts between this summary and the Bidding Procedures, the terms of the Bidding Procedures shall govern.

[4]   For the avoidance of doubt, the Initial Plan Sponsors are deemed Acceptable Bidders.

| | |
|---|---|
| | **March 19, 2023, at 5:00 p.m. (prevailing Central Time)** (the "<u>Bid Deadline</u>") to the Debtors' Advisors. |
| **Bid Requirements**<br><br>*Each Bid by an Acceptable Bidder must be submitted in writing and satisfy the following requirements (collectively, the "<u>Bid Requirements</u>").* | • **<u>New Common Stock</u>**.  Each Acceptable Bidder must submit a Bid for the New Common Stock.<br><br>• **<u>Purchase Price</u>**.  Each Bid must clearly set forth the purchase price, in cash, for the New Common Stock (the "<u>Purchase Price</u>").  For the avoidance of doubt, the Purchase Price must consist of sufficient Cash consideration to satisfy the Qualified Bid requirements set forth below.<br><br>• **<u>Deposit</u>**.  Each Bid must be accompanied by a Cash deposit in the amount equal to 5% of the aggregate Purchase Price to be held in one or more escrow accounts on terms acceptable to the Debtors (the "<u>Deposit</u>").<br><br>• **<u>Transaction Documents</u>.**  Each Bid must be accompanied by executed Transaction documents, including a copy of the Plan, marked to reflect any amendments and modifications thereto, and a plan sponsor agreement (the "<u>Plan Sponsor Agreement</u>"), the form of which will be provided to any Acceptable Bidder by the Debtors prior to the Bid Deadline, including the exhibits, schedules, and ancillary agreements related thereto, and any other related material documents integral to such Bid pursuant to which the Acceptable Bidder proposes to effectuate the proposed transaction, along with copies that are marked to reflect any amendments and modifications to the form Plan Sponsor Agreement provided to such Acceptable Bidder, which amendments and modifications may not be materially more burdensome than the Stalking Horse Bid or otherwise inconsistent with the Bidding Procedures.  The Debtors, in their reasonable business judgment, will determine whether any such amendments and modifications are materially more burdensome.<br><br>• **<u>Proof of Financial Ability to Perform</u>**.  A Bid must include written evidence that the Debtors reasonably conclude demonstrates that the Acceptable Bidder has the necessary financial ability to close the Transaction by no later than March 24, 2023.  Such information must include, *inter alia*, the following:<br><br>   ○ contact names and telephone numbers for verification of financing sources;<br><br>   ○ evidence of the Acceptable Bidder's requisite financial capacity to consummate the Transaction contemplated by its Bid, and/or equity commitments and, if applicable, proof of unconditional debt funding commitments from a recognized financial institution in an aggregate amount equal to the Cash portion of such Bid (including, if applicable, the Acceptable Bidder's payment of cure amounts), or the posting of an irrevocable letter of credit from a recognized banking institution issued |

in favor of the Debtors in such amount, in each case, as are needed to close the Transaction;

o   the Acceptable Bidder's current financial statements (audited if they exist) or other similar financial information reasonably acceptable to the Debtors;

o   a description of the Acceptable Bidder's pro forma capital structure; and

o   any such other form of financial disclosure or credit-quality support information or enhancement reasonably requested by the Debtors demonstrating that such Acceptable Bidder has the ability to close the Transaction.

• **No Contingencies; No Financing or Diligence Outs**.  A Bid shall not be conditioned on (a) the obtaining or the sufficiency of financing, (b) the obtaining of any board of directors or other similar internal approval, or (b) the outcome or review of due diligence.

• **Identity**.  Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Acceptable Bidder if such Acceptable Bidder is an entity formed for the purpose of consummating the proposed Transaction contemplated by such Bid), and the complete terms of any such participation.  Each Bid should also include contact information for the specific person(s) and counsel whom the Debtors (and their advisors) should contact regarding such Bid.

• **Joint Bids**. The Debtors will be authorized to approve joint Bids in their reasonable discretion on a case-by-case basis.

• **Regulatory and Third-Party Approvals**.  A Bid must set forth each regulatory and third-party approval required for the Acceptable Bidder to consummate the Transaction, if any, and the time period within which the Acceptable Bidder expects to receive such regulatory and third-party approvals (which date shall be no later than the Confirmation Hearing), and those actions the Acceptable Bidder will take to ensure receipt of such approval(s) as promptly as possible.

• **Authorization**.  Each Bid must contain evidence acceptable to the Debtors that the Acceptable Bidder has obtained authorization or approval from its board of directors (or a comparable governing body) with respect to the submission of its Bid and the consummation of the Transaction contemplated in such Bid.

• **Management and Employee Obligations**.   Each Bid must assume

| | |
|---|---|
| | management and employee obligations as set forth in the Plan. |
| | - **As-Is, Where-Is**.  Each Bid must include a written acknowledgement and representation that the Acceptable Bidder:  (a) has had an opportunity to conduct any and all due diligence regarding the Transaction prior to making its offer;  (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents in making its Bid; (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, by the Debtors or their advisors or other representatives regarding the Transaction or the completeness of any information provided in connection therewith or the Auction; and (d) the Acceptable Bidder did not engage in any collusive conduct and acted in good faith in submitting its Bid. |
| | - **Back-Up Bid**.  Each Bid shall provide that the Acceptable Bidder will serve as a back-up bidder if the Acceptable Bidder's Bid is the next highest or otherwise best bid. |
| | - **Irrevocable**.  Each Bid must state that in the event a Bid is chosen as the Back-Up Bid, it shall remain irrevocable until the Debtors and the Winning Bidder consummate the Plan Sale. |
| | - **No Break-Up Fee**.  Each Bid shall indicate that such Acceptable Bidder will not seek any transaction break-up fee, expense reimbursement, or similar type of payment and expressly waive any right to assert an administrative expense claim for substantial contribution under section 503(b) of the Bankruptcy Code in connection with bidding and/or participating in the Auction. |
| | By submitting its Bid, each Acceptable Bidder is agreeing, and shall be deemed to have agreed, to abide by and honor the terms of the Bidding Procedures and to refrain from submitting a Bid, or seeking to reopen the Auction, after conclusion of the Auction.  **The submission of a Bid shall constitute a binding and irrevocable offer to consummate the Transaction reflected in such Bid.** |
| **Designation of Qualified Bidders** | A Bid will be considered a "Qualified Bid," and each Acceptable Bidder that submits a Qualified Bid will be considered a "Qualified Bidder,"[5] if the Debtors determine that such Bid:<br><br> - satisfies the Bid Requirements set forth above; |

---

[5]   For the avoidance of doubt, the Initial Plan Sponsors are deemed Qualified Bidders, and the Plan Sale shall be a Qualified Bid and entitled to participate in the Auction, if any, notwithstanding anything to contrary contained in the Bidding Procedures.

- is reasonably likely (based on availability of financing, antitrust, or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Winning Bid, no later than March 24, 2023; and

- provides for a Transaction value accounting for:

  o payment in full in Cash of the following obligations:

    ▪ $60 million outstanding under the DIP Facility, plus interest, fees, and expenses as of the Effective Date; *plus*

    ▪ all outstanding obligations owing under the ABL Facility; *plus*

  o fulfilling all Plan Sponsor obligations under the Plan, including satisfying all claims as and to the extent set forth in the Plan;[6]

  o an initial Overbid (as defined below) providing incremental value in Cash consideration of at least $500,000.00.

Prior to commencement of the Auction, the Debtors will notify each Acceptable Bidder whether such party is a Qualified Bidder.

If any Bid is determined by the Debtors not to be a Qualified Bid, the Debtors will refund such Acceptable Bidder's Deposit on the date that is three business days after the Bid Deadline.

Between the date that the Debtors notify an Acceptable Bidder that it is a Qualified Bidder and the Auction, the Debtors may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Without the prior written consent of the Debtors, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase their Purchase Price, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in the Bidding Procedures; *provided* that any Qualified Bid may be improved at the Auction as set forth herein. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in the Bidding Procedures.

Notwithstanding anything herein to the contrary, the Debtors reserve the right to work with (a) Potential Bidders and Acceptable Bidders to aggregate two or more Bids into a single consolidated Bid prior to the Bid Deadline or (b) Qualified Bidders to aggregate two or more Qualified Bids into a single Qualified Bid prior to the conclusion of the Auction. The Debtors reserve the right to cooperate with any Acceptable Bidder to cure any deficiencies in a Bid that is not initially deemed to be a Qualified Bid. The Debtors may accept a

---

[6] For the avoidance of doubt, the Winning Bidder shall be responsible for any taxes that arise due to the consummation of the Transaction.

| | |
|---|---|
| | single Qualified Bid or multiple Bids that, if taken together in the aggregate, would otherwise meet the standards for a single Qualified Bid (in which event those multiple bidders shall be treated as a single Qualified Bidder and their Bid a single Qualified Bid for purposes of the Auction).<br><br>Notwithstanding anything to the contrary contained herein, the Debtors shall not accept any Bid which would result in the net Cash proceeds contemplated by such Bid being less than the amount necessary to repay in full in Cash all outstanding obligations under the DIP Facility and the ABL Facility on the date the sale contemplated by such Bid is consummated, which, for the avoidance of doubt, shall be no later than March 24, 2023 or the termination, expiration, or maturity of the DIP Facility, whichever is earlier. |
| **The Auction** | If the Debtors receive one or more Qualified Bids, in addition to the Stalking Horse Bid, and the Debtors determine that such Qualified Bid represents a higher or better value than the value available through the Stalking Horse Bid, the Debtors will conduct the Auction to determine the Winning Bidder with respect to the Transaction.  If the Debtors have received no Qualified Bids other than the Stalking Horse Bid as of the Bid Deadline, then the Auction will not occur and the Debtors will proceed to seek confirmation of the Plan Sale.  If the Debtors elect not to conduct an Auction because the Debtors did not receive any Qualified Bid other than the Stalking Horse Bid, then the Debtors shall file a notice with the Court of such election within one business day of the determination of such election by the Debtors.<br><br>No later than commencement of the Auction, the Debtors will notify all Qualified Bidders of the highest or otherwise best Qualified Bid, as determined in the Debtors' business judgment (the "Baseline Bid"), and provide copies of the documents supporting the Baseline Bid to all Qualified Bidders.   The determination of which Qualified Bid constitutes the Baseline Bid and which Qualified Bid constitutes the Winning Bid (as defined below) shall take into account any factors the Debtors reasonably deem, in the Debtors' business judgment, relevant to the value of the Qualified Bid to the Debtors' estates, including, among other things: (i) the number, type, and nature of any changes to the Plan requested by the Qualified Bidder; (ii) the amount and nature of the total consideration (iii) the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof; (iv) the net economic effect of any changes to the value to be received by the Debtors' estates from the Transaction contemplated by the Baseline Bid; (v) the tax consequences of such Qualified Bid; and (vi) the impact to vendors, landlords, and employees (collectively, the "Bid Assessment Criteria").<br><br>Unless otherwise indicated as provided by the Bidding Procedures Order, the Auction shall take place, if necessary, on **March 21, 2023, at 9:00 a.m. (prevailing Central Time)**, via remote video or in-person at the Debtors' election. |

The Auction shall be conducted in a timely fashion according to the following procedures:

- **The Debtors Shall Conduct the Auction**. The Debtors (with the assistance of their applicable professionals) shall direct and preside over the Auction. At the start of the Auction, the Debtors shall describe the terms of the Baseline Bid. All incremental Bids made thereafter shall be Overbids and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders. The Debtors shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids, and the Winning Bid.

  Only Qualified Bidders, the Debtors, the DIP Agent, the ABL Lenders, and each of their respective legal and financial advisors, and any other parties specifically invited or permitted to attend by the Debtors, shall be entitled to attend the Auction, and the Qualified Bidders shall appear at the Auction in person and may speak or bid themselves or through duly authorized representatives. Except as otherwise permitted by the Debtors, only Qualified Bidders shall be entitled to bid at the Auction.

- **Terms of Overbids**. "<u>Overbid</u>" means any bid made at the Auction by a Qualified Bidder subsequent to the Debtors' announcement of the Baseline Bid. Each Overbid must comply with the following conditions:

  o <u>Minimum Overbid Increment</u>. Any Overbid following the Baseline Bid or following any subsequent Prevailing Highest Bid (as defined below) shall be in increments of value (including revised treatment under the Plan) of $500,000.00, unless otherwise determined by the Debtors.

  o <u>Conclusion of Each Overbid Round</u>. Upon the solicitation of each round of Overbids, the Debtors may announce a deadline (as the Debtors may, in their business judgment, extend from time to time, the "<u>Overbid Round Deadline</u>") by which time any Overbids must be submitted to the Debtors.

  o <u>Overbid Alterations</u>. An Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable in the aggregate to the Debtors' estates than any prior Qualified Bid or Overbid, as determined in the Debtors' business judgment, but shall otherwise comply with the terms of the Bidding Procedures.

  o <u>Announcing Highest Bid</u>. Subsequent to each Overbid Round Deadline, the Debtors shall announce whether the Debtors have identified an Overbid as being higher or otherwise better than the Baseline Bid, in the initial Overbid Round, or, in subsequent rounds, the Overbid previously designated by the Debtors as the prevailing highest or otherwise best

| | |
|---|---|
| | Bid (the "<u>Prevailing Highest Bid</u>").  The Debtors shall describe to all Qualified Bidders the material terms of any new Overbid designated by the Debtors as the Prevailing Highest Bid, as well as the value attributable by the Debtors to such Prevailing Highest Bid based on, among other things, the Bid Assessment Criteria.<br><br>• **Consideration of Overbids**.  The Debtors reserve the right, in their business judgment, to adjourn the Auction one or more times (in consultation with the ABL Lenders), to, among other things (a) facilitate discussions between the Debtors and Acceptable Bidders, (b) allow Qualified Bidders to consider how they wish to proceed, and (c) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their business judgment, may require, that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed Transaction at the prevailing Overbid amount.<br><br>• **Closing the Auction**.  The Auction shall continue until there is only one Qualified Bid that the Debtors determine, in their business judgment, to be the highest or otherwise best Qualified Bid.  Such Qualified Bid shall be declared the Winning Bid and such Qualified Bidder, the Winning Bidder, at which point the Auction will be closed.  The Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction to the then Prevailing Highest Bid.  Such acceptance by the Debtors of the Winning Bid is conditioned upon approval by the Court of the Winning Bid.  As soon as reasonably practicable after closing the Auction, the Debtors shall finalize definitive documentation to implement the terms of the Winning Bid, including, as applicable, the Plan, the Plan Supplement (as defined in the Plan), the Confirmation Order (as defined in the Plan), and/or other form of definitive documentation, and cause such definitive documentation to be filed with the Court.<br><br>• **No Collusion; Good-Faith *Bona Fide* Offer**.  Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that (a) it has not engaged in any collusion with respect to the bidding and (b) its Qualified Bid is a good-faith *bona fide* offer and it intends to consummate the proposed Transaction if selected as the Winning Bidder. |
| **Designation of Back-Up Bidder** | The Qualified Bidder with the second highest or otherwise best bid or combination of bids (the "<u>Back-Up Bid</u>") to purchase the New Common Stock (the "<u>Back-Up Bidder</u>") will be determined by the Debtors at the conclusion of the Auction and will be announced at that time to all the Qualified Bidders participating in the Auction.  The Debtors' selection of a Back-Up Bid shall be deemed final and the Debtors shall not accept any further bids or offers to submit a bid after such selection.  If for any reason a Winning Bidder fails to |

| | |
|---|---|
| | consummate the Plan Sale within the time permitted, then the Back-Up Bidder will automatically be deemed to have submitted the Winning Bid for the New Common Stock, and the Back-Up Bidder shall be deemed a Winning Bidder for the New Common Stock and shall be required to consummate the Plan Sale with the Debtors by no later than March 24, 2023 without further order of the Bankruptcy Court, provided that the Debtors shall file a notice with the Bankruptcy Court. |
| **Consent to Jurisdiction** | All Qualified Bidders at the Auction shall be deemed to have consented to the jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction or the construction and enforcement of the Bidding Procedures. |
| **Reservation of Rights** | **Subject to the approval rights set forth in the Restructuring Support Agreement, the Debtors reserve their rights to modify the Bidding Procedures in their business judgment and consistent with the Restructuring Support Agreement, in any manner that will best promote the goals of the Bidding Procedures, or impose, at or prior to the Auction, additional customary terms and conditions on a Transaction, including: (i) extending the deadlines set forth in the Bidding Procedures; (ii) adjourning the Auction at the Auction; (iii) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (iv) canceling the Auction; and (v) rejecting any or all Bids or Qualified Bids.  Nothing in the Bidding Procedures shall abrogate the fiduciary duties of the Debtors.** |

17.     The Bidding Procedures recognize the Debtors' fiduciary obligations to maximize value, and, as such, do not impair the Debtors' ability to consider all proposals.  And, as noted, the Bidding Procedures preserve the Debtors' right to modify the Bidding Procedures to best promote the goals of the marketing and bidding process, including, without limitation, maximizing value for the Debtors' estates.  Importantly, the Bidding Procedures also allow the Debtors to abandon the pursuit of the sale process and solely focus on the Plan Sale if no actionable bids are received or if continuing such sale process appears to become, on balance, a waste of estate resources.

**III.     Notice of Auction.**

18.     The Auction, if any, shall take place on **March 21, 2023, at 9:00 a.m. (prevailing Central Time)**, in person or via remote videoconference.  As soon as practicable after entry of the

Bidding Procedures Order, the Debtors will cause the notice of the Auction (the "Auction Notice"), substantially in the form attached to the Bidding Procedures Order as **Exhibit 2**, to be served on (a) all parties listed on the notice block of this Motion below, (b) all known holders of liens, encumbrances, and other claims secured by the Debtors' assets, and (c) any parties that have expressed written interest in pursuing a potential Transaction in connection with the prepetition Marketing Process.

19.     The Auction Notice is reasonably calculated to provide all interested parties with timely and proper notice of the Auction, if any, including the date, time, and place of the Auction. Accordingly, the Debtors request that the form and manner of the Auction Notice be approved and no other or further notice of the Auction be required.

**Basis for Relief**

I.     **The Relief Sought in the Bidding Procedures Order Is in the Best Interests of the Debtors' Estates and Should Be Approved.**

20.     Courts have made clear that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling an estate's assets.  *See, e.g.*, *In re Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc., et al. (In re Continental Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or a debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *In re Crutcher Resources Corp.*, 72 B.R. 628, 631 (Bankr. N.D. Tex. 1987) ("A Bankruptcy Judge has considerable discretion in approving a § 363(b) sale of property of the estate other than in the ordinary course of business but the movant must articulate some business justification for the sale.").

21.     The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate.  *See In re Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998) ("The purpose of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the estate."); *In re Food Barn Stores, Inc.*, 107 F.3d 558, 564–65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the [Bankruptcy] Code [is] to enhance the value of the estate at hand."); *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 659 (S.D.N.Y. 1992) ("It is a well-established principle of bankruptcy law that the objective of the bankruptcy rules and the [Debtor]'s duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate." (citation omitted)).

22.     To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and, therefore, are appropriate in the context of bankruptcy transactions.  *See In re Integrated Res., Inc.*, 147 B.R. at 659 (bidding procedures "are important tools to encourage bidding and to maximize the value of the debtor's assets"); *In re Fin. News Network, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) ("court-imposed rules for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estates").  Where there is a court-approved auction process, the assets are presumed to sell for a full and fair price because the best way to determine value is exposure to the market.  *See Bank of Am. Nat'l Trust & Sav. Ass'n. v. LaSalle St. P'ship*, 526 U.S. 434, 457 (1999); *see also In re Trans World Airlines, Inc.*, No. 01-00056, 2001 WL 1820326, at *4 (Bankr. D. Del. 2001) (while a "sale transaction does not require an auction procedure," "the auction procedure has

developed over the years as an effective means for producing an arm's length fair value transaction.").

23.     Here, the Bidding Procedures will promote active bidding from interested parties and will elicit the highest or otherwise best offers available for the New Common Stock.  The Bidding Procedures are designed to facilitate orderly yet competitive bidding to maximize value. In particular, the Bidding Procedures contemplate an open auction process and provide potential bidding parties with sufficient time to perform due diligence and acquire the information necessary to submit a timely and well-informed bid.  This is especially true where, as here, the New Common Stock has been subjected to an extensive prepetition and ongoing postpetition marketing process. Further, having the Stalking Horse Bid in place ensures that the Debtors can set a minimum purchase price for the New Common Stock that will be tested by the marketplace, and an alternate transaction will only be pursued in the event that it is value-maximizing in the best interests of the Debtors' stakeholders.

24.     The proposed Bidding Procedures will encourage competitive bidding and are appropriate under the relevant standards governing auction proceedings.  Accordingly, the Court should enter the Bidding Procedures Order.

## II.     The Form and Manner of the Auction Notice Should Be Approved.

25.     Pursuant to Bankruptcy Rule 2002(a), the Debtors are required to provide creditors with 21-days' notice of a hearing where the Debtors will seek to use, lease, or sell property of the estate outside the ordinary course of business.  Bankruptcy Rule 2002(c) requires any such notice to include the time and place of the auction and the hearing and the deadline for filing any objections to the relief requested therein.  Notice of this Motion and the related hearing to consider entry of the Bidding Procedures Order, coupled with service of the Auction Notice, as provided

for herein, is reasonably calculated to provide all interested parties with timely and proper notice of a potential Transaction, including the date, time, and place of the Auction (if one is held) and the Bidding Procedures and the dates and deadlines related thereto.  Accordingly, the Debtors request that this Court approve the form and manner of the Auction Notice.

## Emergency Consideration

26.     The Debtors request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first twenty-one days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm."  An immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations and that any delay in granting the relief requested could hinder the Debtors' restructuring and cause irreparable harm.  Failure to receive the requested relief during the first twenty-one days of these chapter 11 cases would imperil the Debtors' restructuring and cause irreparable harm.  The Debtors have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and request that the Court approve the relief requested in this Motion on an emergency basis.

## Waiver of Bankruptcy Rule 6004(a) and 6004(h)

27.     The Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the fourteen-day stay period under Bankruptcy Rule 6004(h).

## Reservation of Rights

28.     Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law, (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any

grounds, (c) a promise or requirement to pay any claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested in this Motion or a finding that any particular claim is an administrative expense claim or other priority claim, (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates, (g) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law, or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

29.     The Debtors reserve the right to file and serve any supplemental pleading or declaration that the Debtors deem appropriate or necessary in their sole discretion, including any such pleading or declaration summarizing the competitive bidding and Marketing Process and the results thereof.

30.     The Debtors further reserve the right in their reasonable business judgment to suspend or cancel the Marketing Process and pursue the Plan Sale at any time if it appears that the Marketing Process will not yield a value maximizing transaction.

## Notice

31.     The Debtors will provide notice of this Motion to the following: (a) the U.S. Trustee for the Southern District of Texas; (b) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the Initial Plan Sponsors; (d) counsel to the ABL Lenders; (e) the Office of the United States Attorney's Office for the Southern District of Texas; (f) the Internal Revenue Service; (g) the United States Securities and Exchange Commission; (h) the state attorneys general for states in which the Debtors conduct business; (i) the Environmental Protection Agency; (j) counsel to the agent under the Debtors' postpetition debtor-in-possession financing facility; (k) all known holders of liens, encumbrances, and other claims secured by the Debtors' assets; (l) any parties that have expressed written interest in pursuing a potential Transaction in connection with the prepetition Marketing Process; and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, no other notice is needed.

The Debtors request that the Court enter the Bidding Procedures Order granting the relief requested herein and granting such other relief as the Court deems appropriate under the circumstances.

Houston, Texas
February 9, 2023

/s/ *Matthew D. Cavenaugh*

**JACKSON WALKER LLP**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
J. Machir Stull (TX Bar No. 24070697)
Victoria Argeroplos (TX Bar No. 24105799)
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone:     (713) 752-4200
Facsimile:     (713) 752-4221
Email:         mcavenaugh@jw.com
               jwertz@jw.com
               mstull@jw.com
               vargeroplos@jw.com

*Proposed Co-Counsel to the Debtors
and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Steven N. Serajeddini, P.C. (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:         joshua.sussberg@kirkland.com
               steven.serajeddini@kirkland.com

-and-

Joshua M. Altman (*pro hac vice* pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:         josh.altman@kirkland.com

*Proposed Co-Counsel to the Debtors
and Debtors in Possession*

## Certificate of Accuracy

    I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Matthew D. Cavenaugh*
Matthew D. Cavenaugh

## Certificate of Service

    I certify that on February 9, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Matthew D. Cavenaugh*
Matthew D. Cavenaugh