IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NIELSEN & BAINBRIDGE, LLC, *et al.*,[1] | ) | Case No. 23-90071 (DRJ) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**MOTION OF BLACK DIAMOND CAPITAL MANAGEMENT, LLC
FOR ALLOWANCE OF SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIM
PURSUANT TO BANKRUPTCY CODE SECTION 507(b)**

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

Black Diamond Capital Management, LLC ("Black Diamond") as the authorized representative of certain lenders[2] under that certain Credit Agreement, dated as of April 26, 2017 (as amended, supplemented, or otherwise modified from time to time, the "First Lien Credit Agreement" and the term loans provided thereunder, the "First Lien Term Loans") by and among certain of the Debtors as borrowers and/or guarantors, Deutsche Bank AG New York Branch, as administrative and collateral agent, and the Lenders party thereto from time to time (the "First Lien Lenders"), files this motion (this "Motion") for entry of an order allowing the First Lien Lenders

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.omniagentsolutions.com/NBGHome. The Debtors' service address in these chapter 11 cases is: 12303 Technology Boulevard, Suite 950, Austin, TX 78727.

[2] The Black Diamond lenders are: Black Diamond Credit Strategies Master Fund Ltd., Black Diamond Commercial Finance L.L.C., Black Diamond CLO 2019-2 Ltd., Black Diamond CLO 2017-1 Ltd., Black Diamond CLO 2016-1 Ltd., and BDCM Strategic Capital Fund I, L.P.

a superpriority administrative expense claim pursuant to section 507(b) of title 11 of the United States Code (the "Bankruptcy Code"), and respectfully states as follows:

## Jurisdiction and Venue

1.    The Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this Motion pursuant to 28 U.S.C. §157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). Black Diamond consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    The statutory predicates for relief sought herein are 11 U.S.C. §§ 105(a) and 1112(b).

## Background

4.    On February 8, 2023 (the "Petition Date"), the above-captioned debtors and debtors in possession (the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

5.    On February 9, 2023, the Debtors filed a motion to obtain postpetition financing and use cash collateral [Docket No. 20] (the "DIP Motion"). Among other things, the DIP Motion sought approval of a $60 million secured, superpriority, priming debtor-in-possession financing facility (the "DIP Facility") provided by KKR Credit Advisors (US) LLC ("KKR") and Silver Point Capital, L.P. ("Silver Point" and together with KKR, the "DIP Lenders"), who together hold over 50 percent of the prepetition first lien term loans under the First Lien Credit Agreement (the "First Lien Term Loans").

2

6.     On February 9, 2023, the Debtors also filed their *Joint Chapter 11 Plan of Reorganization of Nielsen & Bainbridge, LLC and Its Debtor Affiliates* (as amended, supplemented, or otherwise modified from time to time, the "Plan")[3], pursuant to which KKR and Silver Point would serve as the stalking horse bidder for 100 percent of the equity of the reorganized Debtors for consideration equal to their rolled-up DIP claims plus any additional cash amount they elect to receive on account of their new money DIP Claims, subject to higher and better bids.  If KKR and Silver Point are the winning bidder, there will be no recovery to the First Lien Lenders or any junior creditor under the Plan.

7.     On February 10, 2023, the Court entered an order approving the DIP Motion on an interim basis [Docket No. 67] (the "Interim DIP Order").  On March 6, 2023, the Court entered an order approving the DIP Motion on a final basis [Docket No. 249] (the "Final DIP Order" and together with the Interim DIP Order, the "DIP Orders").

8.     Pursuant to the Final DIP Order, the Debtors stipulated that they were indebted to the First Lien Lenders in an aggregate principal amount of not less than $282,262,097.00, plus accrued and unpaid interest, and any fees, expenses, disbursements, costs, charges, indemnities, and any other obligations under the First Lien Credit Agreement.  Final DIP Order, ¶ G(vi).  The Debtors further stipulated to the validity of (a) the First Lien Lenders' first priority security interest in and lien on the priority collateral of the First Lien Lenders (the "Term Loan Priority Collateral") and (b) the First Lien Lenders' security interest in and lien on the priority collateral of the ABL lenders (the "ABL Priority Collateral"), junior only to the liens of the ABL Lenders and any other liens permitted by the First Lien Credit Agreement.

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

9. How the Debtors' assets are allocated between Term Loan Priority Collateral and ABL Priority Collateral is set forth in the ABL Intercreditor Agreement, dated as of April 26, 2017, by and among, Wells Fargo Bank, N.A., as the ABL Agent, Deutsche Bank AG New York Branch, as the First Lien Term Loan Agent, and Cortland Capital Market Services LLC, as the Second Lien Term Loan Agent (the "ABL Intercreditor Agreement"). Among other things, the Term Loan Priority Collateral includes all real estate of the Debtors.

## Argument

### I. The First Lien Lenders Are Entitled To An Administrative Claim Under Section 507(b) Of The Bankruptcy Code For the Diminution in Value of Their Collateral.

10. The First Lien Lenders are entitled to allowance of a superpriority administrative claim against the Debtors pursuant to section 507(b) of the Bankruptcy Code, which provides as follows:

> If the trustee, under section 362, 363, or 364 of this title, provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, such creditor has a claim allowable under subsection (a)(2) of this section arising from the stay of action against such property under section 362 of this title, from the use, sale, or lease of such property under section 363 of this title, or from the granting of a lien under section 364(d) of this title, then such creditor's claim under such subsection shall have priority over every other claim allowable under such subsection.

11 U.S.C. § 507(b).

11. Section 507(b) "allows an administrative expense claim under § 503(b) where adequate protection payments prove insufficient to compensate a secured creditor for the diminution in value of its collateral". *In re Scopac*, 624 F.3d 274, 282 (5th Cir. 2010). In circumstances where priming liens are granted on a secured lender's collateral, "[w]hether protection is adequate depends directly on how effectively it compensates the secured creditor for loss of value caused by the superpriority given to the post-petition loan." *In re Swedeland Dev.*

4

*Grp., Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) (internal quotation marks omitted).  In other words, adequate protection should provide a prepetition secured lender with the same level of protection it would have had if there had not been any postpetition financing that primed its liens.  *Id.*

12. A secured creditor is entitled to allowance of a superpriority administrative claim under section 507(b) when it satisfies the following requirements:

> (1) it was previously provided adequate protection under Bankruptcy Code §§ 362, 363, or 364,
>
> (2) notwithstanding such adequate protection, it holds a claim that is allowable under 11 U.S.C. § 507(a)(2), and
>
> (3) its § 507(a)(2) claim arose from (i) imposition of the automatic stay under § 362, (ii) [the debtor's ] use, sale, or lease of [secured creditor's] collateral under § 363, or (iii) the granting of a senior lien under § 364(d).

*In re Bailey Tool & Mfg. Co.*, 2018 WL 550581, at *4 (Bankr. N.D. Tex. Jan. 23, 2018) (citing *Ford Motor Credit Co. v. Dobbins*, 35 F.3d 860, 865-66 (4th Cir. 1994)).

13. All three requirements for allowance of a superpriority administrative expense claim in favor of the First Lien Lenders are satisfied in these chapter 11 cases.  <u>First</u>, the Final DIP Order expressly provides that "adequate protection [is] granted to the Prepetition Secured Parties as provided in paragraphs 12–14 of [the] Final Order . . . ."  Final DIP Order, ¶ H(v).  Paragraph 13 of the Final Order provides adequate protection to the Prepetition Secured Parties, including the First Lien Lenders, by continuing to maintain and insure the First Lien Lenders' collateral.  Final DIP Order, ¶ 13.

14. <u>Second</u>, the First Lien Lenders have an allowable claim under section 507(a)(2) of the Bankruptcy Code, which grants priority to administrative expenses allowed under section 503(b).  Section 503(b)(1) provides that the actual, necessary, costs and expenses of preserving the estate are entitled to be allowed as administrative expenses.  "This requires actual use of the creditor's property by the debtor or trustee that confers a concrete benefit to the estate."  *In re*

5

*Bailey Tool & Mfg. Co.*, 2018 WL 550581, at *5 (citations omitted).  The record is clear that the Debtors used the First Lien Lenders' collateral postpetition to operate and maintain their businesses while in chapter 11 and grant senior priming liens to the DIP Lenders under section 364(d) of the Bankruptcy Code to secure the DIP Facility.  Accordingly, the Debtors' use of the First Lien Lender's collateral was an "actual and necessary cost of preserving the estate" within the meaning of section 503(b), for which the First Lien Lenders are entitled to an administrative expense claim.

15. <u>Third</u>, the First Lien Lenders' claim arises out of (a) the Debtors' postpetition use of the First Lien Lenders' collateral pursuant to section 363 of the Bankruptcy Code and (b) the Debtors' grant of a first priority senior priming security interest in and lien on the First Lien Lenders' collateral pursuant to section 364(d) of the Bankruptcy Code, both of which were permitted by the DIP Orders.  While the First Lien Lenders' claim on account of the Debtors' postpetition use of their collateral may be minimal, the diminution in value of the First Lien Lenders' collateral caused by the imposition of a $60 million priming DIP Facility is indisputable.  As set forth in greater detail below, one particular portion of the First Lien Lenders' collateral had a minimum value of $8.8 million right before the Petition Date.  With a proposed Plan recovery of zero, the First Lien Lenders' diminution in value claim under section 507(b) can be ***no less*** than $8.8 million.

16. In addition, the Final DIP Order expressly provides that nothing therein shall "prejudice, limit or otherwise impair the rights of any Prepetition Secured Party to seek new, different or additional adequate protection or assert any other right . . . ."[4]  Accordingly, the Final DIP Order makes clear that any Prepetition Secured Party (as defined in the Final DIP Order) has

---

[4] Final DIP Order, ¶ H(ix).

a right to assert a diminution in value claim under section 507(b) of the Bankruptcy Code if the adequate protection provided under the Final DIP Order was insufficient.

17. For these reasons, the First Lien Lenders hold a superprioity administrative expense claim based on the decline in value of the First Lien Lenders' collateral during the chapter 11 cases caused by the Debtors' use of the First Lien Lenders' collateral and the granting of a senior priming security interest in and lien on the First Lien Lenders' collateral.

**II. The Amount of the First Lien Lenders' Claim Under 507(b) of the Bankruptcy Code.**

18. The amount of the First Lien Lenders' claim under section 507(b) of the Bankruptcy Code claim will depend on the fair market value of the First Lien Lenders' collateral on the Petition Date and the effective date of the plan. *See In re Emerge Energy Servs. LP*, No. 19-11563 (KBO), 2019 WL 7634308 at *14 (Bankr. D. Del. Dec. 5, 2019) ("[T]he appropriate valuation methodology is dependent on what is to be done with the subject collateral on the effective date – whether it is to be liquidated, surrendered, or retained.").

19. The validity, priority, and extent of the First Lien Lenders' security interest in and lien on the Debtors' assets is set forth in the Final DIP Order and not in dispute. On the Petition Date, the First Lien Lenders had a first priority security interest in and lien on the Term Loan Priority Collateral, which includes all of the Debtors' real estate. Just prior to the Petition Date, the Debtors had their Selma manufacturing facility appraised. According to the Debtors' appraisal, as of January 23, 2023 the market value of the Selma manufacturing facility was approximately $11.4 million to $13.7 million for the ideal user with a general market value of approximately $8.8 million to $11.4 million. Using these figures, the First Lien Lenders had an interest in the Selma manufacturing facility of ***no less*** than $8.8 million right before the Petition Date, with the actual value to be determined by this Court at an evidentiary hearing on this Motion.

20. The First Lien Lenders are expected to receive no recovery under the Plan. If the Plan is confirmed and becomes effective, the First Lien Lenders' interest in their collateral will be reduced to zero on the effective date, with the prepetition value attributable to their collateral absorbed entirely by the DIP Facility. Accordingly, the value of the First Lien Lenders' interest in their collateral will have decreased by ***at least*** $8.8 million from the Petition Date to the effective date of the Plan just on account of their first priority security interest in and lien on the Selma manufacturing facility.

21. Considering the First Lien Lenders' collateral package includes much more than the manufacturing facility, the First Lien Lenders' claim under section 507(b) could be upwards of $46 million just applying the Debtors' own conservative liquidation values as illustrated in **Exhibit A** attached hereto. Using going concern values, the appropriate valuation under the circumstances, the First Lien Lenders' diminution claim would likely be significantly more. While the full amount of the First Lien Lenders' claim under section 507(b) will be determined by the Court at an evidentiary hearing, at the very least the First Lien Lenders will have an administrative expense claim in the amount of $8.8 million, with priority over all other administrative expense claims.

[*Remainder of page intentionally left blank*]

WHEREFORE, Black Diamond respectfully requests entry of an order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: April 13, 2023
Houston, Texas

**WINSTON & STRAWN LLP**

/s/ *Katherine A. Preston*
Katherine A. Preston (TX Bar No. 24088255)
800 Capitol St., Suite 2400
Houston, Texas 77002
Telephone: (713) 651-2600
Facsimile: (713) 651-2700
Email: kpreston@winston.com

and

Daniel J. McGuire
35 W. Wacker Drive
Chicago, Illinois 60601-9703
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
Email: dmcguire@winston.com

*Counsel to Black Diamond Capital Management, LLC*

**Certificate of Service**

      I certify that on April 13, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                      */s/ Katherine A. Preston*
                                                      Katherine A. Preston