United States Bankruptcy Court
Southern District of Texas

**ENTERED**

April 25, 2023

Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| NIELSEN & BAINBRIDGE, LLC, *et al*.,[1] | § | CASE NO. 23-90071 (DRJ) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |
| | § | **Re: Docket No. 350** |

## AGREED ORDER GRANTING MOTION OF CREDITOR PNC EQUIPMENT FINANCE, LLC TO ALLOW LATE-FILED PROOF OF CLAIM

On this day came on to be considered the Motion of PNC Equipment Finance, LLC ("PNC") to Allow Late-Filed Proof of Claim [Docket No. 350] (the "Motion"). The court finds that notice of the Motion and deadline to object to the Motion was proper and sufficient and that the Motion was properly served on all required parties. After reviewing the Motion and the Exhibits annexed thereto and noting the agreement of the parties per the signature of their respective counsel below, the Court is of the opinion that the Motion should be GRANTED.

**IT IS THEREFORE ORDERED that:**

1.      PNC is authorized to file a late filed proof of claim in the above-styled Chapter 11 bankruptcy case filed by Nielsen & Bainbridge, LLC in the form attached as Exhibit "A" to PNC's Motion and attached hereto as **Exhibit A** (the "Proof of Claim).

2.      PNC shall file the Proof of Claim within five (5) days from the entry of this Order.

3.      All parties' rights with respect to the Proof of Claim are expressly reserved.

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/NBGHome. The Debtors' service address in these chapter 11 cases is: 12303 Technology Boulevard, Suite 950, Austin, TX 78727.

**Signed:  April 25, 2023.**

_____

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

AGREED IN FORM AND SUBSTANCE:

Padfield & Stout, LLP
420 Throckmorton Street, Suite 1210
Fort Worth, Texas 76102
Telephone: (817) 338-1616
Facsimile: (817) 338-1610

/s/ Christopher V. Arisco

Christopher V. Arisco
State Bar I.D. # 24064830
carisco@padfieldstout.com

*Attorney for PNC*

/s/ *Matthew D. Cavenaugh*

**JACKSON WALKER LLP**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
J. Machir Stull (TX Bar No. 24070697)
Victoria Argeroplos (TX Bar No. 24105799)
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone:        (713) 752-4200
Facsimile:        (713) 752-4221
Email:            mcavenaugh@jw.com
                  jwertz@jw.com
                  mstull@jw.com
                  vargeroplos@jw.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**

Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Steven N. Serajeddini, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:        (212) 446-4800
Facsimile:        (212) 446-4900
Email:            joshua.sussberg@kirkland.com
                  steven.serajeddini@kirkland.com

-and-

Joshua M. Altman (admitted *pro hac* vice)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:        (312) 862-2000
Facsimile:        (312) 862-2200
Email:            josh.altman@kirkland.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

**<u>Exhibit A</u>**

**Proof of Claim**

**Fill in this information to identify the case:**

Debtor 1    NIELSON & BAINBRIDGE, LLC

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   Southern District of Texas

Case number    23-90071


EXHIBIT A

Official Form 410

# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. **Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

## Part 1:    Identify the Claim

| | | |
|---|---|---|
| 1. **Who is the current creditor?** | PNC Equipment Finance, LLC<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor _____ | |

| | |
|---|---|
| 2. **Has this claim been acquired from someone else?** | ☑ No<br>☐ Yes.  From whom? _____ |

3. **Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Christopher V. Arisco c/o Padfield & Stout, LLP<br>Name | Michael McGinley - VIP Litigation and Recovery<br>Name |
| 420 Throckmorton Street, Suite 1210<br>Number        Street | 655 Business Center Drive<br>Number        Street |
| Fort Worth            TX        76102<br>City            State        ZIP Code | Horsham            PA        19044<br>City            State        ZIP Code |
| Contact phone  817.338.1616 | Contact phone  267-960-4066 |
| Contact email  carisco@padfieldstout.com | Contact email  mmcginley@leaserv.com |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

| | | |
|---|---|---|
| 4. **Does this claim amend one already filed?** | ☑ No<br>☐ Yes.  Claim number on court claims registry (if known) _____ | Filed on _____<br>MM  / DD  / YYYY |

| | |
|---|---|
| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No<br>☐ Yes.  Who made the earlier filing? _____ |

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:   4   9   2   4

**7. How much is the claim?**   $_____13,022.25 . **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Lease of Equipment

**9. Is all or part of the claim secured?**

☐ No

☑ Yes.   The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☑ Other. Describe:   Equipment

**Basis for perfection:**   UCC-1 Financing Statement

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**   $_____13,022.25

**Amount of the claim that is secured:**   $_____13,022.25

**Amount of the claim that is unsecured:**   $_____0.00 (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**   $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☐ No

☑ Yes. **Amount necessary to cure any default as of the date of the petition.**   $_____0.00

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

Official Form 410      **Proof of Claim**      page 2

| | | Amount entitled to priority |
|---|---|---|

12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

☑ No

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

❑ Yes. *Check one:*

❑ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).     $_____

❑ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).     $_____

❑ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).     $_____

❑ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).     $_____

❑ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).     $_____

❑ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies.     $_____

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

❑ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

❑ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

❑ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  _____
                    MM  /  DD   /  YYYY

_____
Signature

**Print the name of the person who is completing and signing this claim:**

Name  _____
       First name          Middle name          Last name

Title  _____

Company  _____
          Identify the corporate servicer as the company if the authorized agent is a servicer.

Address  _____
          Number       Street

_____
City                           State      ZIP Code

Contact phone  _____     Email  _____

 


## PNC
### EQUIPMENT FINANCE

Lease Agreement # __164924__

| Lessee: | | | |
|---|---|---|---|
| Legal Name:<br>NIELSON & BAINBRIDGE LLC | Fed Tax ID#: ▓▓▓▓ | | |
| Legal Address:<br>2808 HWY 67 SOUTH, POCAHONTAS, AR 72466 | Phone Number: ▓▓▓▓ | Cell Number: | Fax Number: |
| Billing Address:<br>P.O. BOX 507, POCAHONTAS, AR 72455 | E-Mail Address:<br>pmoreland@nbgroupus.com | | |
| Send Invoice to Attention of: | Vendor Name:<br>Hugg and Hall Equipment Company- Little Rock | | |

Equipment Description: See Schedule A

Equipment Location Address: See Schedule A

**Transaction Terms/Payment Schedule:**

| Number of Payments:<br>60 | Rent Amount:<br>$754.89 + Applicable Taxes | Payable:<br>Monthly | Lease Term (in months):<br>60 | End of Lease Provision:<br>Full Pay Out $1.00 |
|---|---|---|---|---|
| Advance Rent:<br>$0.00 + Applicable Taxes | Security Deposit:<br>$ | Documentation Fee: | | Location County:<br>*Randolph* |

☐ See attached Schedule B for variable payment structure

We have written this Lease in plain language because we want you to understand its terms. Please read this Lease carefully and feel free to ask us any questions you may have. The words "you" and "your" mean the Lessee named above. The words "we", "us", and "our" refer to the Lessor named below. ONLY THE WRITTEN TERMS OF THIS LEASE (INCLUDING THOSE ON THE SECOND AND THIRD PAGES) ARE ENFORCEABLE. TERMS OR ORAL PROMISES WHICH ARE NOT CONTAINED IN THIS WRITTEN LEASE MAY NOT BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS LEASE ONLY BY ANOTHER WRITTEN AGREEMENT BETWEEN YOU AND US. YOU AGREE TO COMPLY WITH THE TERMS AND CONDITIONS OF THIS LEASE. THIS LEASE IS NOT CANCELABLE. YOU AGREE THAT THE EQUIPMENT (AS DEFINED HEREIN) WILL BE USED FOR BUSINESS PURPOSES ONLY AND NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES.

YOU CERTIFY THAT ALL THE INFORMATION GIVEN IN THIS LEASE AND YOUR APPLICATION WAS CORRECT AND COMPLETE WHEN THIS LEASE WAS SIGNED. THIS LEASE IS NOT BINDING UPON US OR EFFECTIVE UNLESS AND UNTIL WE EXECUTE THIS LEASE. THIS LEASE WILL BE GOVERNED BY THE LAWS OF THE COMMONWEALTH OF PENNSYLVANIA. ALL DISPUTES UNDER THIS LEASE SHALL BE RESOLVED IN THE FEDERAL COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA OR STATE COURTS IN MONTGOMERY COUNTY, PENNSYLVANIA.

### TERMS AND CONDITIONS

1. LEASE. Subject to the terms of this Lease, you agree to lease from us the Equipment and, if applicable, finance any delivery and installation costs (together, the "Equipment") when we accept this Lease at our office in Pennsylvania.

2. DELIVERY AND ACCEPTANCE. Acceptance of the Equipment occurs upon delivery. When you receive the Equipment, you agree to inspect it and to verify by telephone or in writing such information as we may require. Delivery and installation costs are your responsibility. If you signed a purchase contract for the Equipment, by signing this Lease, you assign your right, but none of your obligations under it, to us.

3. RENT. The Lease goes into effect and the term of the Lease begins when it is signed and accepted by us (the "Commencement Date"). The first Rent payment is due on the date we accept the Lease or any later date designated by us. Subsequent Rent payments (plus applicable taxes) will be due for successive months, whether or not you receive an invoice from us, until the balance of the Rent payments and any additional Rent payments or expenses chargeable to you under this Lease are paid in full. You will pay us any required Advance Rent, Documentation Fee or Security Deposit when you sign this Lease. Security Deposits or Advanced Rents may be commingled and do not earn interest. If we collect more than one payment as Advance Rent, we may apply such Advanced Rent to the last Rent payment. You authorize us to change the Rent by not more than 15% due to changes in the Equipment configuration which may occur prior to our acceptance of this Lease. Restrictive endorsements on checks you send to us will not reduce your obligations to us. Unless a proper exemption certificate is provided, applicable sales and use taxes will be added to the Rent. For any payment which is not received by 10 days after its due date, you agree to pay a late charge equal to the higher of 5% of the amount due or $35.00 (not to exceed the maximum amount permitted by law), as reasonable collection costs. We may charge you a return check or non-sufficient funds charge of $50.00 for any payment which is returned by the bank for any reason (not to exceed the maximum amount permitted by law).

4. UNCONDITIONAL OBLIGATION. YOU AGREE THAT YOU ARE UNCONDITIONALLY OBLIGATED TO PAY ALL RENT AND ANY OTHER AMOUNTS DUE UNDER THIS LEASE FOR THE FULL LEASE TERM EVEN IF THE EQUIPMENT IS DAMAGED OR DESTROYED, IF IT IS DEFECTIVE OR YOU HAVE TEMPORARY OR PERMANENT LOSS OF ITS USE. YOU ARE NOT ENTITLED TO REDUCE OR SET-OFF AGAINST RENT OR OTHER AMOUNTS DUE UNDER THIS LEASE FOR ANY REASON WHATSOEVER.

5. DISCLAIMER OF WARRANTIES. THE EQUIPMENT IS BEING LEASED TO YOU IN AS-IS CONDITION. NO INDIVIDUAL IS AUTHORIZED TO CHANGE ANY PROVISION OF THIS LEASE. YOU AGREE THAT WE HAVE NOT MANUFACTURED THE EQUIPMENT OR LICENSED THE EQUIPMENT AND THAT YOU HAVE SELECTED THE EQUIPMENT BASED UPON YOUR OWN JUDGMENT. YOU HAVE NOT RELIED ON ANY STATEMENTS WE OR OUR EMPLOYEES HAVE MADE. WE HAVE NOT MADE AND DO NOT MAKE ANY EXPRESS OR IMPLIED REPRESENTATIONS OR WARRANTIES WHATSOEVER, INCLUDING WITHOUT LIMITATION, THE EQUIPMENT MERCHANTIBILITY, FITNESS FOR A PARTICULAR PURPOSE, SUITABILITY, DESIGN, CONDITION, DURABILITY, OPERATION, QUALITY OF MATERIALS OR WORKMANSHIP, OR COMPLIANCE WITH SPECIFICATIONS OR APPLICABLE LAW. We hereby notify you that you may have rights under your contract with the manufacturer or licensor and you may contact the manufacturer or licensor for a description of your warranty rights. Provided you are not in default under this Lease, you may enforce all warranty rights directly against the manufacturer of the Equipment. You agree to settle any dispute you may have regarding performance of the Equipment directly with the manufacturer of the Equipment.

0017-7LS v20180427

 

TERMS AND CONDITIONS – continued

**6. TITLE AND SECURITY INTEREST.** If the End of Lease Provision is $101.00 or less (a "Nominal Purchase Provision"), you shall have title to the Equipment immediately upon delivery and shall be deemed to be the owner of the Equipment as long as you are not in default under this Lease. In the event of a default, title to the Equipment shall revert to us free and clear of any rights and interests you may have in the Equipment. If the End of Lease Provision is other than a Nominal Purchase Provision (a "Stated Purchase Provision"), the Equipment is and shall remain our sole property during the Lease Term. Unless you are in default under this Lease, you shall have the right to peacefully possess and use the Equipment during the Lease Term. To secure all of your obligations to us under this Lease you hereby grant us a security interest in (a) the Equipment to the extent of your interests in the Equipment, (b) anything attached or added to the Equipment at any time, (c) any money or property from the sale of the Equipment, and (d) any money from an insurance claim if the Equipment is lost or damaged. You agree that the security interest will not be affected if this Lease is changed in any way. You hereby appoint us (or our agent) as your true and lawful attorney-in-fact to affix your signature to UCC financing statements prepared and filed on your behalf by us (or our agent) with the same force and effect as if you had signed such financing statements. If we request, you agree to sign financing statements in order for us to publicly record our security interest. This Lease or a copy of this Lease shall be sufficient as a financing statement and may be filed as such. This Lease may be executed in counterparts, and facsimile signatures shall suffice as originals.

**7. USE, MAINTENANCE AND REPAIR.** You will not move the Equipment from the Equipment Location without our advance written consent. You will give us reasonable access to the Equipment Location so that we can check the Equipment's existence, condition and proper maintenance. You will use the Equipment for the manner in which it was intended, as required by all applicable manuals and instructions and keep it eligible for any manufacturer's certification and/or standard, full-service maintenance contract. At your own cost and expense, you will keep the Equipment in good repair, condition and working order, ordinary wear and tear excepted. All replacement parts and repairs will become our property. You will not make any permanent alterations to the Equipment.

**8. TAXES.** You agree to pay to us, when due upon our demand, all taxes, fines, and penalties relating to this Lease or the Equipment that are now or in the future assessed or levied by any state, local or other government authority. We will file all personal property, use or other tax returns (unless we notify you otherwise in writing) and you agree to pay us a fee for making such filings of $35.00 per location. We do not have to contest any taxes, fines or penalties. You will pay estimated property taxes with the Rent (s) or annually, as invoiced and all other taxes and charges, relating to the ownership, leasing, rental, sale, purchase, possession or use of the Equipment as part of the Rent or as billed by Lessor.

**9. INDEMNITY.** We are not responsible for any injuries, damages, penalties, claims or losses, including reasonable legal expenses, incurred by you or any other person caused by the transportation, installation, selection, purchase, lease, ownership, possession, modification, maintenance, condition, operations, use, return or disposition of the Equipment. You agree to reimburse us for and defend us against any claims for such losses, damages, penalties, claims, injuries, or expenses. This indemnity continues even after the Lease has expired for acts or omissions which occurred during the Lease Term.

**10. IDENTIFICATION.** You authorize us to insert or correct missing information on this Lease, including your official name, serial numbers, and any other information describing the Equipment. We will send you copies of the changes. You will attach to the Equipment any name plates or stickers we provide you.

**11. LOSS OR DAMAGE.** You are responsible for any loss of the Equipment from any cause at all, whether or not insured, from the time the Equipment is shipped to you until the time it is returned to us. If any item of the Equipment is lost, stolen or damaged, you will promptly notify us of such an event. Then, at our option, you will either (a) repair the Equipment so that it is in good condition and working order, eligible for any manufacturer's certification, or (b) pay us an amount equal to the Net Book Value (as defined in Section 14) of the lost, stolen or damaged item. If you have satisfied your obligations under this Section 11, we will forward to you any insurance proceeds which we receive for lost, damaged, or destroyed items. If you are in default, we will apply any insurance proceeds we receive to reduce your obligations under Section 14 of this Lease.

**12. INSURANCE.** During the term of the Lease, you will keep the Equipment insured, at your sole cost and expense, against all risks of a loss or damage in an amount not less than the replacement cost of the Equipment, without co-insurance and with a deductible amount acceptable to us. You will also obtain and maintain for the term of the Lease, comprehensive public liability insurance and such policy shall provide us with thirty (30) days prior written notice of cancellation of termination of such policy covering both personal injury and property damage in an amount acceptable to us. We will be the sole named loss payee on the property insurance under a separate lender's loss payable clause and named as an additional insured on the public liability insurance. You will pay all premiums for such insurance and you shall deliver proof of insurance coverage that is satisfactory to us. If you do not provide such insurance, you agree that we have the right, but not the obligation, to obtain such insurance and charge you for all costs. You irrevocably appoint us as your attorney-in-fact to make claims for, receive payment of, and execute and endorse all documents, checks or drafts in payment for loss or damage under any said insurance policies. If your agent or broker does not confirm property insurance coverage on the Equipment at our request for confirmation or cancellation of existing policy, the Equipment will be insured under our policy. An insurance charge will be added to each of your invoices. The insurance charge includes premium, interest and/or finance charges on that premium, fees for tracking the insurance, and administration expenses (including a fee payable to us which may include a profit).

**13. DEFAULT.** You will be in default under this Lease if any of the following happens: (a) we do not receive any Rent or other payment due hereunder within 10 days after its due date (no prior notice from us to you of such default is necessary), or (b) you or any of your guarantors become insolvent, are liquidated, dissolved, merged, or transfer substantially all stock or assets, or stop doing business, divide into two or more entities, or assign rights or property for the benefit of creditors, or (c) a petition is filed by or against you or any of your guarantors under any bankruptcy or insolvency law, or (d) (for individuals) you or any of your guarantors die, or have a guardian appointed, or (e) any representation you have made in this Lease shall prove to be false or misleading in any material aspect, or (f) you or any of your guarantors breach the terms and conditions of this Lease or any guaranty and do not correct the default within 10 days after we send you written notice of the default, or (g) you default on any other agreement between you and us (or our affiliates).

**14. REMEDIES.** Upon the occurrence of default, we may, in our sole discretion, do any or all of the following: (a) provide written notice to you of default, (b) as liquidated damages for loss of a bargain and not as a penalty, declare due and payable (i) any and all amounts which may be then due and payable to us under this Lease, plus (ii) the present value of all Rent payments remaining through the end of the Lease Term, plus (iii) the Stated or Nominal Purchase Provision amount, if stated, or if no fixed Stated or Nominal Purchase amount is given, our reasonable estimate of the Fair Market Value of the Equipment as of the end of the Lease Term, all discounted at 3%, but only to the extent permitted by law (collectively, the "Net Book Value"); charge you interest on all monies due us at the rate of eighteen percent (18%) per year from the date of default until paid, but in no event more than the maximum rate permitted by law. We have the right to require you to make the Equipment available to us for repossession during reasonable business hours or we may repossess the Equipment, so long as we do not breach the peace in doing so, or we may use legal process in compliance with applicable law pursuant to court order to have the Equipment repossessed. You will not make any claims against us or the Equipment for trespass, damage or any other reason. Any return or repossession will not be considered a termination or cancellation of the Lease. If the Equipment is returned or repossessed we will sell or re-rent the Equipment at terms we determine, at one or more public or private sales and apply the net proceeds (after deducting any related expenses) to your obligations. You remain liable for any deficiency. Although you agree that we have no obligation to sell the Equipment, if we do sell the Equipment, we will reduce the Net Book Value by the amounts that we receive. You will immediately pay us the remaining Net Book Value. If this Lease includes a Nominal Purchase Provision and we receive more than the Net Book Value plus our costs of sale and any other expenses, we will give you the excess. You agree (a) that we only need to give you 10 days advance notice of any sale and no notice of advertising, (b) to pay all of the costs we incur to enforce our rights against you including collection costs, repossession costs and attorney's fees

0017-7LS v20160427




## TERMS AND CONDITIONS – continued

**14. REMEDIES. (Continued)** and (c) that we will retain all of our rights against you even if we do not choose to enforce them at the time of your default. These remedies are cumulative, and in addition to any other remedies provided for by law, and may be exercised concurrently or separately. Any failure or delay by us to exercise any right shall not operate as a waiver of any other right or future right.

**15. YOUR PROVISION AT END OF LEASE.** Provided you are not in default, upon expiration of a Lease with a Nominal Purchase Provision you shall purchase the Equipment at the end of the Lease Term for such amount plus any applicable taxes and we will release any security interest we may have in the Equipment; YOU DO NOT HAVE THE OPTION TO RETURN THE EQUIPMENT. If the End of Lease Provision is a Fair Market Value Purchase Option ("FMV") and provided you are not in default, you have the option, upon prior written notice, to (a) purchase the Equipment for the FMV amount as determined in our sole judgment, or (b) subject to our approval, re-lease the Equipment for one additional 12 month term at the fair market rental value, or (c) return the Equipment to us in accordance with Section 16. Such prior written notice shall be provided to us no later than 90 days prior to the end of the Lease Term. IF NO DEFAULT (AS DEFINED IN SECTION 13) HAS OCCURRED AND IS CONTINUING UNDER THIS LEASE, AND IF LESSEE FAILS TO PROVIDE SUCH PRIOR WRITTEN NOTICE WITHIN THE TIME SPECIFIED ABOVE, THE LEASE TERM SHALL BE AUTOMATICALLY EXTENDED FOR A TERM OF 30 DAYS ("THE RENEWAL TERM"). THE LEASE TERM SHALL THEREAFTER BE AUTOMATICALLY AND CONTINUALLY RENEWED FOR ADDITIONAL RENEWAL TERMS BUT MAY BE TERMINATED BY THE LESSEE BY WAY OF WRITTEN NOTICE FROM THE LESSEE TO THE LESSOR (A "RENEWAL TERMINATION NOTICE"). Termination of the Renewal Term, or any subsequent renewal term, shall be effective 30 days after our receipt of your Renewal Termination Notice. If you elect to purchase the Equipment, upon payment of the agreed upon FMV, including all sales tax and other applicable taxes, we will transfer the Equipment to you AS IS-WHERE IS, WITHOUT ANY REPRESENTATION OR WARRANTY.

**16. RETURN OF EQUIPMENT.** If (a) a default occurs, (b) you do not purchase the Equipment at the end of the Lease Term, or (c) you do not extend the Lease, you will immediately return, at your sole expense, the Equipment to any location(s) and aboard any carrier(s) we may designate in the continental United States. The risk of loss of the Equipment shall remain with Lessee until the returned Equipment is accepted by Lessor. The Equipment must be free of decals or related markings. The Equipment must be properly prepared for shipping and packed according to manufacturer's recommendations or specifications, freight prepaid and insured, maintained in accordance with Section 7, and in "Average Saleable Condition" which means that the Equipment is immediately available for use by a third party buyer, user or lessee, other than yourself, without the need for any repair or refurbishment. The Equipment shall be returned with all accessories, manuals, maintenance records, log books, plans, drawings and schematics, inspection and overhaul records, operating requirements or other materials pertinent to the Equipment's operation, maintenance, assembly or disassembly. Unit(s) will have no structural damage, bent frames or warped uprights, and body, mast, hydraulic cylinder and fork(s) shall be free of any damage. Each unit shall be able to operate normally in forward and reverse through all speed ranges or gears, and shall lift, lower and tilt, properly when loaded to their rated capacity. Hydraulic cylinders must not be bent or gouged. All engines, transmissions, gears, electric motors, clutch's and drive axles shall be in good operating condition, with no leaks, smoking, slipping or grabbing. Batteries, if applicable, shall be in good, safe operating condition with no dead cells or cracked cases and capable of sustaining at least 80% of a full charge to their original rated capacity. Chargers will maintain electrical output as specified by the manufacturer, with no case damage or broken parts. Brakes will hold vehicle as specified by manufacturer with and without rated load, and have no heat discoloration or warpage. Radiator and /or cooling system shall be free from leaks, punctures or holes. Units will have serviceable tires with good tread and without chunks, or flat spots. Attachments, if any, must be in good operating condition and not worn beyond 50% of usable life. Usage is limited to 2000 hours/ year with no harsh applications with a per hour fee for such excess hours equal to the sum of the annual Rent payments divided by the allowed annual hours. Excluded applications include but are not limited to refuse, corrosive, hazardous and recycling applications. YOU WILL CONTINUE TO PAY RENT UNTIL THE EQUIPMENT IS RECEIVED AND ACCEPTED BY US.

**17. YOUR REPRESENTATIONS.** You state for our benefit that as of the date of this Lease (a) you have the lawful power and authority to enter into this Lease, (b) the individuals signing this Lease have been duly authorized to do so on your behalf, and (c) all financial information you have provided us is true and accurate and provides a good representation of your financial condition.

**18. YOUR PROMISES.** In addition to the other provisions of this Lease, you agree that during the term of this Lease (a) you will promptly notify us in writing if you move your principal place of business, if you change the name of your business, or if there is a change in your ownership, and (b) you will provide to us such financial information as we may reasonably request from time-to-time.

**19. ASSIGNMENT.** YOU WILL NOT SELL, TRANSFER (INCLUDING WITHOUT LIMITATION, ANY TRANSFER RESULTING FROM YOUR DIVISION INTO TWO OR MORE ENTITIES), ASSIGN, PLEDGE, SUB-LEASE OR PART WITH POSSESSION OF THE EQUIPMENT, OR FILE OR PERMIT A LIEN TO BE FILED AGAINST THE EQUIPMENT. We may, without notifying you, sell, assign, or transfer this Lease and our interests in the Equipment. You agree that if we do so, the new owner (and any subsequent owners) will have the same rights and benefits that we now have, but will not have to perform any of our obligations. You agree that the rights of the new owner will not be subject to any claims, defenses, or set-offs that you may have against us. Any such assignment, sale, or transfer of this Lease or Equipment will not relieve us of any obligations we may have to you under this Lease. If you are given notice of a new owner of this Lease, you agree to respond to any requests about this Lease and, if directed by us, to pay the new owner all rents and other amounts due under this Lease.

**20. COLLECTION EXPENSES.** You agree that we can, but do not have to, take on your behalf any action which you fail to take as required by this Lease, and our expenses will be in addition to the Rent which you owe us.

**21. MISCELLANEOUS.** This Lease contains our entire agreement and supersedes any conflicting provision of any Equipment purchase order or any other agreement. TIME IS OF THE ESSENCE IN THIS LEASE. If a court finds any provision of this Lease to be unenforceable, the remaining terms of this Lease shall remain in effect. THIS LEASE IS A "FINANCE LEASE" AS DEFINED IN ARTICLE 2A OF THE UNIFORM COMMERCIAL CODE. To the extent you are permitted by applicable law, you waive all rights and remedies conferred upon a lessee by Article 2A (Sections 508-522) of the Uniform Commercial Code-You authorize us (or our agent) to (a) obtain credit reports, (b) make such other credit inquiries as we may deem necessary, and (c) furnish payment history information to payment reporting agencies. To the extent permitted by law, we may charge a fee to reimburse our expenses for preparing financing statements, other documentation costs, and ongoing administration costs during the term of the Lease.

**22. NOTICES.** All of your written notices to us must be certified mail or recognized overnight delivery service, postage prepaid, to us at our address stated in this Lease, or by electronic transmission with oral confirmation of receipt. All of our notices to you may be sent first class mail, postage prepaid, to your address stated in this Lease or by electronic transmission.

**23. WAIVERS.** WE AND YOU IRREVOCABLY WAIVE ANY AND ALL RIGHT EITHER OF US MAY HAVE TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR CLAIM OF ANY NATURE RELATING TO THIS AGREEMENT, ANY DOCUMENTS EXECUTED IN CONNECTION WITH THIS AGREEMENT OR ANY TRANSACTION CONTEMPLATED IN ANY OF SUCH DOCUMENTS. WE AND YOU ACKNOWLEDGE THAT THE FOREGOING WAIVER IS KNOWING AND VOLUNTARY. To the extent you are permitted by applicable law, you waive all rights and remedies conferred upon a lessee by Article 2A (Sections 508-522) of the Uniform Commercial Code including but not limited to lessee's rights to: (a) cancel or repudiate this Lease; (b) reject or revoke acceptance of the Equipment; (c) recover damages from lessor for any breach of warranty or for any other reason; (d) grant a security interest in any Equipment in lessee's possession. To the extent you are permitted by applicable law, you waive any rights you now or later may have under any statute or otherwise which requires us to sell or otherwise use any Equipment to reduce our damages, which requires us to provide you with notice of default, intent to accelerate amounts becoming due or acceleration of amounts becoming due, or which may otherwise limit or modify any of our rights or remedies. We will not be liable for specific performance of this Lease or for any losses, damages, delay or failure to deliver Equipment.




## TERMS AND CONDITIONS – continued

**24. ANTI-MONEY LAUNDERING/INTERNATIONAL TRADE LAW COMPLIANCE.** You represent and warrant to us, as of the date of this Lease, the date of each advance of proceeds under this Lease, the date of any renewal, extension or modification of this Lease, and at all times until this Lease has been terminated and all amounts thereunder have been indefeasibly paid in full, that: (a) no Covered Entity (i) is a Sanctioned Person; (ii) has any of its assets in a Sanctioned Country or in the possession, custody or control of a Sanctioned Person; or (iii) does business in or with, or derives any of its operating income from investments in or transactions with, any Sanctioned Country or Sanctioned Person in violation of any law, regulation, order or directive enforced by any Compliance Authority; (b) the proceeds of this Lease will not be used to fund any operations in, finance any investments or activities in, or, make any payments to, a Sanctioned Country or Sanctioned Person in violation of any law, regulation, order or directive enforced by any Compliance Authority; (c) the funds used to repay this Lease are not derived from any unlawful activity; and (d) each Covered Entity is in compliance with, and no Covered Entity engages in any dealings or transactions prohibited by, any laws of the United States, including but not limited to any Anti-Terrorism Laws. You covenant and agree that you shall immediately notify us in writing upon the occurrence of a Reportable Compliance Event.

As used herein: "Anti-Terrorism Laws" means any laws relating to terrorism, trade sanctions programs and embargoes, import/export licensing, money laundering, or bribery, all as amended, supplemented or replaced from time to time; "Compliance Authority" means each and all of the (a) U.S. Treasury Department/Office of Foreign Assets Control, (b) U.S. Treasury Department/Financial Crimes Enforcement Network, (c) U.S. State Department/Directorate of Defense Trade Controls, (d) U.S. Commerce Department/Bureau of Industry and Security, (e) U.S. Internal Revenue Service, (f) U.S. Justice Department, and (g) U.S. Securities and Exchange Commission; "Covered Entity" means you, your affiliates and subsidiaries, all guarantors, pledgors of collateral, all owners of the foregoing, and all of your brokers or other agents acting in any capacity in connection with this Lease; "Reportable Compliance Event" means that any Covered Entity becomes a Sanctioned Person, or is indicted, arraigned, investigated or custodially detained, or receives an inquiry from regulatory or law enforcement officials, in connection with any Anti-Terrorism Law or any predicate crime to any Anti-Terrorism Law, or self-discovers facts or circumstances implicating any aspect of its operations with the actual or possible violation of any Anti-Terrorism Law; "Sanctioned Country" means a country subject to a sanctions program maintained by any Compliance Authority; and "Sanctioned Person" means any individual person, group, regime, entity or thing listed or otherwise recognized as a specially designated, prohibited, sanctioned or debarred person or entity, or subject to any limitations or prohibitions (including but not limited to the blocking of property or rejection of transactions), under any order or directive of any Compliance Authority or otherwise subject to, or specially designated under, any sanctions program maintained by any Compliance Authority. Remedies. We will not be liable for specific performance of this Lease or for any losses, damages, delay or failure to deliver Equipment.

**25. CHANGE IN BUSINESS, MANAGEMENT OR OWNERSHIP.** You covenant and agree that from the date of this Lease until all of the obligations have been paid in full and all of our commitments have been terminated, you will not, without our prior written consent (a) make or permit any change in (i) your form of organization, (ii) the nature of your business as carried on as of the date hereof, (iii) the composition of your current executive management, or (iv) your equity ownership, or (b) merge or transfer (including, without limitation, any transfer resulting from your division into two or more entities) all or substantially all of your stock or assets.

**26. USA PATRIOT ACT NOTICE.** To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies each Lessee that opens an account. What this means: when you open an account, we will ask for the business name, business address, taxpayer identifying number and other information or documentation that will allow us to identify you, such as organizational documents. For some businesses and organizations, we may also need to ask for identifying information and documentation relating to certain individuals associated with the business or organization.

**27. BENEFICIAL OWNERS.** If applicable, you agree to deliver certification(s) of beneficial owners in the form requested by us (as executed and delivered to us on or prior to the date of this Lease and updated from time to time, the "Certification of Beneficial Owners"). You represent and warrant (which shall be continuing in nature and remain in full force and effect until all of the obligations are paid in full) that the information in the Certification of Beneficial Owners executed and delivered to us on or prior to the date of this Lease (if applicable), as updated from time to time in accordance with this Lease, is true, complete and correct as of the date hereof and as of the date any such update is delivered. You acknowledge and agree that the Certification of Beneficial Owners (if applicable) is a Lease document. You agree that from the date of execution of this Lease until all of the obligations have been paid in full and all of our commitments have been terminated, you will provide (i) confirmation of the accuracy of the information set forth in the most recent Certification of Beneficial Owners provided to us (if applicable), as and when requested by us, (ii) if applicable, a new Certification of Beneficial Owners in form and substance acceptable to us when the individual(s) identified as a controlling party and/or a direct or indirect individual owner on the most recent Certification of Beneficial Owners provided to us have changed, and (iii) such other information and documentation as may reasonably be requested by us from time to time for purposes of compliance by us with applicable laws (including without limitation the USA PATRIOT Act and other "know your customer" and anti-money laundering rules and regulations), and any policy or procedure implemented by us to comply therewith.

BY SIGNING THIS AGREEMENT, YOU ACKNOWLEDGE AND AGREE THAT YOU HAVE READ AND UNDERSTAND THE TERMS AND CONDITIONS ON THE PREVIOUS PAGES OF THIS AGREEMENT. Should we fail to receive the original Lease documents, you agree to be bound by the electronic copy of this Lease with appropriate signatures on the document. Lessee waives the right to challenge in court the authenticity of an electronic copy of this Lease and the electronic copy shall be considered the original and shall be the binding agreement for the purposes of any enforcement action under paragraph 14.

| Lossor | | Lessee | |
|---|---|---|---|
| PNC Equipment Finance, LLC<br>655 Business Center Drive, Horsham, PA 19044 | | NIELSON & BAINBRIDGE LLC<br>2606 HWY 67 SOUTH, POCAHONTAS, AR 72466 | |
| Signature: | Date: 6/25/19 | Signature: | Date: 6/24/19 |
| Print Name: | Title: | Print Name: Terry Varner | Title: OP MGR |

0017-7LS v20180427

 

Lease Agreement # 164924

SCHEDULE A

**EQUIPMENT DESCRIPTION:**

| Quantity | Year, Manufacturer, Model and Description | Serial Number |
|---|---|---|
| 1 | 2019 Doosan BR20SP-7 Lift Truck | FRAOK-1960-00162 |
| 1 | Battery | |
| 1 | Charger | |

**EQUIPMENT LOCATION ADDRESS:**

| | Location County: |
|---|---|
| 2606 HWY 67 SOUTH, POCAHONTAS, AR 72466 | *Randolph* |
| 2606 HWY 67 SOUTH, POCAHONTAS, AR 72466 | |
| 2606 HWY 67 SOUTH, POCAHONTAS, AR 72466 | |

 

CERTIFICATE OF ACCEPTANCE

| Lessor: | PNC Equipment Finance, LLC |
| Lessee: | NIELSON & BAINBRIDGE LLC |
| Agreement #: | 164924 |

**Equipment:**

| Quantity | Year, Manufacturer, Model and Description | Serial Number |
|---|---|---|
| 1 | 2019 Doosan BR20SP-7 Lift Truck | FRAOK-1960-00162 |
| 1 | Battery | |
| 1 | Charger | |

Obligor, through its authorized representative, hereby certifies to Financier that:

1.     The Equipment has been duly delivered to the location where it will be used, which the Equipment Location is set forth in the above described Agreement with Obligor ("Financing Agreement").

2.     All of the Equipment has been inspected and is determined to be (a) complete, (b) properly installed, (c) functioning, and (d) in good working order and in compliance with all applicable specifications.

3.     The Equipment is of a size, design, capacity and manufacture acceptable to Obligor and suitable for Obligor's purposes.

4.     Obligor acknowledges that the signature on this document (i) constitutes unconditional acceptance of the Equipment under and subject to the terms of the Financing Agreement, (ii) that such acceptance is not on a trial basis and (iii) hereby authorizes the commencement of the Financing Agreement and the date below reflects the date the equipment was accepted.

Obligor is not in default under the Financing Agreement and all of Obligor's statements and promises set forth in the Financing Agreement are true and correct.

A photocopy, facsimile, scanned copy or other electronic copy of this document shall be accepted as a legal binding agreement.

Accepted by:

Lessee: NIELSON & BAINBRIDGE LLC

By: X _____
(Signature)

Jerry Varner
(Name)

Operations Manager
(Title)

6/24/19
(Date)

0014-3LS V20170112

 

APPLICATION SURVEY

Lessor:         PNC Equipment Finance, LLC
Lessee:         NIELSON & BAINBRIDGE LLC
Agreement #:    164924

Please complete this survey for all transactions that have an End of Lease Provision of FMV (Fair Market Value). This document outlines the mutually agreeable operating conditions and use of the equipment referenced in the above Lease.

EQUIPMENT DESCRIPTION:

| Quantity | Manufacturer, Model and Description | Serial Number |
|----------|-------------------------------------|---------------|
| 1 | 2019 Doosan BR20SP-7 Lift Truck | FRAOK-1960-00162 |
| 1 | Battery | |
| 1 | Charger | |

EQUIPMENT LOCATION ADDRESS:

| 2606 HWY 67 SOUTH, POCAHONTAS, AR 72466 |
|---|

| 2606 HWY 67 SOUTH, POCAHONTAS, AR 72466 |
|---|

| 2606 HWY 67 SOUTH, POCAHONTAS, AR 72466 |
|---|

Please select the application which best describes how and where the Equipment will be used.

☑ Normal/Clean: The Equipment will encounter few if any adverse conditions. Typically, this would apply to light manufacturing, general warehousing, pharmaceuticals and transportation.

☐ Not Normal/Clean: Applications where "Clean", "Moderately Harsh" and "Harsh" do NOT apply and/or usage is not normal. Typically, this would apply to lightly dusty and/or fibrous conditions, slightly wet applications, uneven/rutted floors, brickyards, lumberyards, plastics manufacturing.

☐ Moderately Harsh: Applications where additional options and/or maintenance are required because of the operating environment. Typically, this would apply to paper mills, textile mills, concrete handling, cold storage, freezer, highly dusty and/or fibrous operating environments, agriculture, sand, textiles manufacturing and very wet conditions.

☐ Harsh: Operating environments that will clearly reduce the Equipment's useful life. Typically, this would apply to foundries, forging, furnaces, refractories, paper or metal recycling, abrasive manufacturing, acid, brine and pickling, salt water environments, chemical plants, corrosives, fertilizer plants, metal working, steel mills, poultry and fish processing, tanneries and hide processing plants/locations.

Please note any exposure to:

☐ Corrosives    ☐ Heat    ☐ Metal Shavings    ☐ Hazardous Materials/Environment

Lessor understands that equipment is occasionally operated in an industry that may indicate a more severe application than the particular usage of the specific equipment (e.g. a forklift in a tannery used to load finished products on trucks which is not used in production and is not exposed to corrosive chemicals used in the process).

The undersigned, duly authorized on behalf of the Lessee, hereby certifies that the above information is true and correct as of the date hereof.

Lessee: NIELSON & BAINBRIDGE LLC

By: _____
(Signature)

Terry Varner
(Name)

Operations Manager
(Title)

6/24/19
(Date)

# iLien Cover Page



Date Printed:  06/25/2019

Debtor:
NIELSEN & BAINBRIDGE, LLC
2606 Highway 67 S
Pocahontas, AR  72455-4147

lease num:  164924
REF2:
REF3:
REF4:
Ref5:
Ref6:
Ref7:
Law Firm Bill Code:

iLien File #:  72077057
Order Confirmation #:  70516167

UserID:  251717
UserName:  JAMES COULSON
Number of Collateral Pages Attached:  0

Transaction Type:  Original
Jurisdiction:  DE, Secretary of State

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Phone: (267) 960-4000 x 4021 Fax: (267) 960-4090

B. E-MAIL CONTACT AT FILER (optional)
amicarelli@leaserv.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)   13052 - ECN Financial

PNC Equipment Finance, LLC          70516167
655 Business Center Drive
Suite 250                           DEDE
Horsham, PA 19044

File with: Secretary of State, DE

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| NIELSEN & BAINBRIDGE, LLC | | | |
| OR  1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 2606 Highway 67 S | Pocahontas | AR | 72455-4147 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |
| OR  2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| PNC Equipment Finance, LLC | | | |
| OR  3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 655 Business Center Drive | Horsham | PA | 19044 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
The Collateral includes the Lessee's items of equipment, furniture and/or fixtures that are described below or in the attached Addendum, all general intangibles, software and goods relating to, arising from or embedded in any of the foregoing, all supporting obligations of all of the foregoing, and all cash and noncash proceeds and products (including without limitation insurance proceeds) of all of the foregoing, and all additions and accessions thereto, substitutions therefor and replacements thereof, in each case whether now existing or hereafter acquired or arising and wherever located:

Doosan BR20SP-7 Lift Truck S/N: FRAOK-1960-00162

This filing is for precautionary purposes in connection with a leasing transaction and is not to be construed as indicating that the transaction is other than a true lease.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien   ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☒ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
70516167          164924

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282




INSURANCE INSTRUCTIONS
SIGNATURE REQUIRED BELOW

Financier (Lender/Lessor):    PNC Equipment Finance, LLC
Obligor (Borrower/Lessee):    NIELSON & BAINBRIDGE LLC
Agreement #:                  164924

   Under the terms of your above referenced Agreement # ("Lease/Loan"), you are required to carry adequate insurance coverage on the financed equipment. Homeowners Policies will not cover commercial financing. If we do not receive your Certificate of Insurance, you will automatically be enrolled in our Comprehensive Equipment Insurance, an affordable coverage plan with NO DEDUCTIBLE underwritten and sold by Assurant.

Please send the Certificate of Insurance with your signed documents or instruct your agent to email the certificate to InsTrack@Assurant.com.

Your Certificate of Insurance must show the following:

- Above referenced Agreement #

- Name of the Insurance Company and Policy Number

- Effective and Expiration Date of Coverage.

- INSURED PARTY: The Obligor listed above must be named as Insured.

- PROPERTY DAMAGE INSURANCE:
   o   For Equipment: Financier must be named Loss Payee against any loss including fire, theft and any other standard peril normally covered under a commercial policy for an amount not less than the replacement cost of the equipment.

   o   For Vehicles: PHYSICAL DAMAGE INSURANCE: Financier must be named Loss Payee for comprehensive and collision coverage.

- LIABILITY INSURANCE: ONLY REQUIRED FOR LEASES.
   o   Financier must be named as Additional Insured. The minimum coverage is $1,000,000 per occurrence/ $1,000,000 aggregate liability coverage.

- LOSS PAYEE/ ADDITIONAL INSURED:
   o   PNC Equipment Finance, LLC and Its Successors And/ Or Assigns (ISAOA)
   o   c/o Insurance Service Center
   o   P.O. Box 979129
   o   Miami, FL 33197-9129

- DESCRIPTION OF EQUIPMENT:  The following equipment must be listed on or attached to the Certificate of Insurance:

| Quantity | Year, Manufacturer, Model and Description | Serial Number |
|---|---|---|
| 1 | 2019 Doosan BR20SP-7 Lift Truck | FRAOK-1960-00162 |
| 1 | Battery | |
| 1 | Charger | |

   By signing below, I acknowledge that I have made sure that my agent understands that I am financing the equipment and that if the Certificate of Insurance is not received within 60 days of the commencement of the Lease/ Loan, the Financier may purchase insurance on the Financier's own interest in the Equipment at my expense.  The insurance charge will be added to my monthly Lease/Loan payment and is non-refundable.

Obligor:  NIELSON & BAINBRIDGE LLC

By: X _____
    (Signature)
    X _____
    (Name)
    X _____
    (Title)
    X _____
    (Date)

0030-1LL v20171110

PMRLSPMT
Operator: JPY

01 Lease Services
Payment History Report - Detail
As of 03/14/2023

Page 1
March 14, 2023   3:44 PM

Contract Number: 164924
Customer: NIELSON & BAINBRIDGE LLC
Address Line 1: 2606 Highway 67 S
Address Line 2:
City, State, Zip: Pocahontas, AR
Equipment Description: LIFT TRUCK

Term of Contract: 60 Months
Payment Frequency: Monthly
Payment Structure: Regular
Inception Date:
First Payment Date: 7/01/19
Maturity Date: 7/01/24

Regular Payment Amount: 831.23
Total Scheduled Payments: 49,873.80
Total Amount Applied: 36,336.63
Current Schedule Balance: 13,537.17
Unapplied Cash: .00
Security Deposit: .00
Equipment Cost:
Residual Value: 45,546.25 / .00

* Indicates contract is a Loan

| Trx No. | Effective Date | Pmt Due Date | Dys Lt | Check Number | Transaction Amount | T T | Contract Payment | Sales Tax | Property Tax | Late Fees | Misc/Other | T C | Equipment Purchase | Security Deposit | Unapplied Cash | Schedule Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 7/12/19 | 7/12/19 | | 6806008 | 4,046.25 | P | .00 | 4,046.25 | .00 | .00 | .00 | | .00 | .00 | .00 | 49,873.80 |
| 2 | 7/23/19 | 8/01/19 | | 7428009 | 831.23 | P | 831.23 | .00 | .00 | .00 | .00 | | .00 | .00 | .00 | 49,042.57 |
| 3 | 7/23/19 | 8/01/19 | | 7468001 | 831.23 | P | 831.23 | .00 | .00 | .00 | .00 | | .00 | .00 | .00 | 48,211.34 |
| 4 | 7/23/19 | 8/01/19 | | 7468001 | -831.23 | R | -831.23 | .00 | .00 | .00 | .00 | | .00 | .00 | .00 | 49,042.57 |
| 5 | 8/21/19 | 9/01/19 | | 8938012 | 831.23 | P | 831.23 | .00 | .00 | .00 | .00 | | .00 | .00 | .00 | 48,211.34 |
| 6 | 9/25/19 | 10/01/19 | | 706026 | 831.23 | P | 831.23 | .00 | .00 | .00 | .00 | | .00 | .00 | .00 | 47,380.11 |
| 7 | 10/23/19 | 11/01/19 | | 2373022 | 831.23 | P | 831.23 | .00 | .00 | .00 | .00 | | .00 | .00 | .00 | 46,548.88 |
| 8 | 11/27/19 | 12/01/19 | | 4741034 | 831.23 | P | 831.23 | .00 | .00 | .00 | .00 | | .00 | .00 | .00 | 45,717.65 |
| 9 | 12/24/19 | 1/01/20 | | 6081017 | 831.23 | P | 831.23 | .00 | .00 | .00 | .00 | | .00 | .00 | .00 | 44,886.42 |
| 10 | 1/23/20 | 2/01/20 | | 7975034 | 831.23 | P | 831.23 | .00 | .00 | .00 | .00 | | .00 | .00 | .00 | 44,055.19 |
| 11 | 2/20/20 | 3/01/20 | | 9574032 | 831.23 | P | 831.23 | .00 | .00 | .00 | .00 | | .00 | .00 | .00 | 43,223.96 |
| 12 | 4/02/20 | 4/01/20 | 1 | 2445018 | 831.23 | P | 831.23 | .00 | .00 | .00 | .00 | | .00 | .00 | .00 | 42,392.73 |
| 13 | 4/30/20 | 5/01/20 | | 7179031 | 831.23 | P | 831.23 | .00 | .00 | .00 | .00 | | .00 | .00 | .00 | 41,561.50 |
| 14 | 6/02/20 | 6/01/20 | 1 | 114047 | 831.23 | P | 831.23 | .00 | .00 | .00 | .00 | | .00 | .00 | .00 | 40,730.27 |
| 15 | 8/12/20 | 7/01/20 | 42 | 4761062 | 831.23 | P | 831.23 | .00 | .00 | .00 | .00 | | .00 | .00 | .00 | 39,899.04 |
| 16 | 8/26/20 | 8/01/20 | 25 | 5563003 | 831.23 | P | 831.23 | .00 | .00 | .00 | .00 | | .00 | .00 | .00 | 39,067.81 |
| 17 | 9/01/20 | 9/01/20 | 9 | 6015073 | 831.23 | P | 831.23 | .00 | .00 | .00 | .00 | | .00 | .00 | .00 | 38,236.58 |
| 18 | 10/27/20 | 8/15/20 | 73 | 102720 | 41.56 | P | .00 | .00 | .00 | 41.56 | .00 | | .00 | .00 | .00 | 38,236.58 |
| 19 | | 9/15/20 | 42 | | 41.56 | P | .00 | .00 | .00 | 41.56 | .00 | | .00 | .00 | .00 | 38,236.58 |
| 20 | | 10/01/20 | 26 | | 831.23 | P | 831.23 | .00 | .00 | .00 | .00 | | .00 | .00 | .00 | 37,405.35 |
| 21 | | 11/01/20 | | | 831.23 | P | 831.23 | .00 | .00 | .00 | .00 | | .00 | .00 | .00 | 36,574.12 |
| 22 | 12/23/20 | 12/01/20 | 22 | 6635475 | 831.23 | P | 831.23 | .00 | .00 | .00 | .00 | | .00 | .00 | .00 | 35,742.89 |
| 23 | | 1/01/21 | | | 831.23 | P | 831.23 | .00 | .00 | .00 | .00 | | .00 | .00 | .00 | 34,911.66 |
| 24 | 2/24/21 | 1/15/21 | 40 | 7572036 | 41.56 | P | .00 | .00 | .00 | 41.56 | .00 | | .00 | .00 | .00 | 34,911.66 |
| 25 | | 2/01/21 | 23 | | 831.23 | P | 831.23 | .00 | .00 | .00 | .00 | | .00 | .00 | .00 | 34,080.43 |
| 26 | 3/24/21 | 3/01/21 | 23 | 8041902 | 831.23 | P | 831.23 | .00 | .00 | .00 | .00 | | .00 | .00 | .00 | 33,249.20 |
| 27 | | 3/15/21 | 9 | | 41.56 | P | .00 | .00 | .00 | 41.56 | .00 | | .00 | .00 | .00 | 33,249.20 |
| 28 | 3/30/21 | 4/01/21 | | 8113480 | 831.23 | P | 831.23 | .00 | .00 | .00 | .00 | | .00 | .00 | .00 | 32,417.97 |
| 29 | | 4/15/21 | | | 41.56 | P | .00 | .00 | .00 | 41.56 | .00 | | .00 | .00 | .00 | 32,417.97 |
| 30 | 5/11/21 | 5/01/21 | 10 | 8817187 | 831.23 | P | 831.23 | .00 | .00 | .00 | .00 | | .00 | .00 | .00 | 31,586.74 |
| 31 | 5/26/21 | 5/26/21 | | 52621 | 15.00 | P | .00 | .00 | .00 | .00 | 15.00 | | .00 | .00 | .00 | 31,586.74 |
| 32 | 5/26/21 | 6/01/21 | | 9043525 | 831.23 | P | 831.23 | .00 | .00 | .00 | .00 | | .00 | .00 | .00 | 30,755.51 |
| 33 | 7/21/21 | 7/01/21 | 20 | 9928381 | 831.23 | P | 831.23 | .00 | .00 | .00 | .00 | | .00 | .00 | .00 | 29,924.28 |
| 34 | | 8/01/21 | | | 831.23 | P | 831.23 | .00 | .00 | .00 | .00 | | .00 | .00 | .00 | 29,093.05 |
| 35 | 9/30/21 | 8/15/21 | 46 | 1037759 | 41.56 | P | .00 | .00 | .00 | 41.56 | .00 | | .00 | .00 | .00 | 29,093.05 |
| 36 | | 9/01/21 | 29 | | 831.23 | P | 831.23 | .00 | .00 | .00 | .00 | | .00 | .00 | .00 | 28,261.82 |
| 37 | | 10/01/21 | | | 831.23 | P | 831.23 | .00 | .00 | .00 | .00 | | .00 | .00 | .00 | 27,430.59 |
| 38 | | 10/15/21 | | | 41.56 | P | .00 | .00 | .00 | 41.56 | .00 | | .00 | .00 | .00 | 27,430.59 |
| 39 | 11/24/21 | 11/24/21 | | 112421 | 15.00 | P | .00 | .00 | .00 | .00 | 15.00 | | .00 | .00 | .00 | 27,430.59 |
| 40 | 11/24/21 | 11/01/21 | 23 | 1985833 | 831.23 | P | 831.23 | .00 | .00 | .00 | .00 | | .00 | .00 | .00 | 26,599.36 |
| 41 | | 12/01/21 | | | 831.23 | P | 831.23 | .00 | .00 | .00 | .00 | | .00 | .00 | .00 | 25,768.13 |
| 42 | 1/20/22 | 12/15/21 | 36 | 2938640 | 41.56 | P | .00 | .00 | .00 | 41.56 | .00 | | .00 | .00 | .00 | 24,936.90 |
| 43 | | 1/01/22 | 19 | | 831.23 | P | 831.23 | .00 | .00 | .00 | .00 | | .00 | .00 | .00 | 24,105.67 |
| 44 | 2/03/22 | 2/01/22 | 2 | 1001762 | 831.23 | P | 831.23 | .00 | .00 | .00 | .00 | | .00 | .00 | .00 | 24,105.67 |
| 45 | 3/09/22 | 2/15/22 | 22 | 6361105 | 41.56 | P | .00 | .00 | .00 | 41.56 | .00 | | .00 | .00 | .00 | 23,274.44 |
| 46 | | 3/01/22 | 8 | | 831.23 | P | 831.23 | .00 | .00 | .00 | .00 | | .00 | .00 | .00 | 22,443.21 |
| 47 | 4/13/22 | 4/01/22 | 12 | 4459708 | 831.23 | P | 831.23 | .00 | .00 | .00 | .00 | | .00 | .00 | .00 | 21,611.98 |
| 48 | 5/02/22 | 5/01/22 | 1 | 1249152 | 831.23 | P | 831.23 | .00 | .00 | .00 | .00 | | .00 | .00 | .00 | 21,611.98 |
| 49 | 5/15/22 | 6/03/22 | 19 | 3480124 | 41.56 | P | .00 | .00 | .00 | 41.56 | .00 | | .00 | .00 | .00 | 20,780.75 |
| 50 | 6/27/22 | 6/01/22 | 26 | 4929065 | 831.23 | P | 831.23 | .00 | .00 | .00 | .00 | | .00 | .00 | .00 | 19,949.52 |
| 51 | 8/01/22 | 7/01/22 | 31 | 7207119 | 831.23 | P | 831.23 | .00 | .00 | .00 | .00 | | .00 | .00 | .00 | 19,949.52 |
| 52 | 8/29/22 | 7/15/22 | 45 | 9002059 | 41.56 | P | .00 | .00 | .00 | 41.56 | .00 | | .00 | .00 | .00 | 19,118.29 |
| 53 | | 8/01/22 | 28 | | 831.23 | P | 831.23 | .00 | .00 | .00 | .00 | | .00 | .00 | .00 | 19,118.29 |
| 54 | | 8/15/22 | 14 | | 41.56 | P | .00 | .00 | .00 | 41.56 | .00 | | .00 | .00 | .00 | 18,287.06 |
| 55 | 9/26/22 | 9/01/22 | 25 | 667070 | 831.23 | P | 831.23 | .00 | .00 | .00 | .00 | | .00 | .00 | .00 | 18,287.06 |
| 56 | 10/31/22 | 9/15/22 | 46 | 3329077 | 41.56 | P | .00 | .00 | .00 | 41.56 | .00 | | .00 | .00 | .00 | 17,455.83 |
| 57 | 10/01/22 | 10/01/22 | 30 | 5069041 | 831.23 | P | 831.23 | .00 | .00 | .00 | .00 | | .00 | .00 | .00 | 16,624.60 |
| 58 | 11/25/22 | 11/01/22 | 24 | 5069041 | 831.23 | P | 831.23 | .00 | .00 | .00 | .00 | | .00 | .00 | .00 | 16,624.60 |

| 60 | 11/15/22 | 76 |  | 41.56 P | .00 | .00 | 41.56 | .00 | .00 | 16,624.60 |
| 61 | 12/01/22 | 60 |  | 831.23 P | .00 | .00 | .00 | .00 | .00 | 15,793.37 |
| 62 | 12/15/22 | 46 |  | 41.56 P | .00 | .00 | 41.56 | .00 | .00 | 15,793.37 |
| 63 | 1/01/23 | 29 |  | 831.23 P | .00 | .00 | .00 | .00 | .00 | 14,962.14 |
| 64 | 1/15/23 | 15 |  | 41.56 P | .00 | .00 | 41.56 | .00 | .00 | 14,962.14 |
| 65 | 2/01/23 |  |  | 831.23 P | .00 | .00 | .00 | .00 | .00 | 14,130.91 |
| 66 | 3/01/23 | 5 2951001 |  | 593.74 P | .00 | .00 | .00 | .00 | .00 | 13,537.17 |
| | 3/06/23 | | | | | | | | | |

Total: 41,119.40    36,336.63    4,046.25    .00    706.52    30.00    .00    .00    13,537.17

Report Keys: TT Column Values for Transaction Type
    C = Credit Rental and Credit Memo
    D = Discount Automatic Update
    M = Miscellaneous Cash
    P = Cash Receipt and Unapplied Cash
    R = Return Check
    W = Write Off

    TC Column Values for Misc/Other Transaction Code
      <blank>   Tran code not setup, or Miscellaneous Cash